**In re Timothy E. CLAPP, Debtor.**

**Bankruptcy No. 86–09590.**

United States Bankruptcy Court,
E.D. Michigan, N.D.

July 3, 1989.

Douglas J. Callahan, Fenton, Mich., for debtor.

Kenneth L. Harris, Southfield, Mich., for Gestetner Corp.

## MEMORANDUM OPINION ON DEBTOR'S MOTION TO AMEND SCHEDULE A–3

ARTHUR J. SPECTOR, Bankruptcy Judge.

On September 4, 1986, Timothy E. Clapp filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in the Flint administrative unit of this Court. Because the debtor resided at all relevant times in Huron County, Michigan, which district is served by the administrative unit of the Court located in the Northern Division at Bay City, we transferred venue to the appropriate unit on October 1, 1986. The debtor's schedules in bankruptcy failed to list a debt owing to Gestetner Corporation. The case was determined to be a "no-asset case" and after the debtor received his discharge, the case was closed on January 16, 1987. The debtor asserted that he had omitted Gestetner from his original schedules because he did not then know then that Gestetner claimed he owed it any money. He learned this, he said, only after Gestetner showed him his signed personal guarantee when he attended (pro se) a pre-trial conference in a state court lawsuit instituted in May, 1988, and served on him in July, 1988. Eventually, on February 27, 1989, judgment was entered in the state court against the debtor in the amount of $18,941.64. Only then, on March 22, almost a month later, and approximately eight months after receiving the complaint, did the debtor move to reopen his bankruptcy case and for leave to amend Schedule A–3 to list Gestetner Corporation.[1] On April 17, 1989, the Court

---

1. His purpose, of course, is to retroactively obtain a discharge of this debt. As frequently noted, in most cases, "the only potential prejudice which [the creditor] may suffer ... is the loss of his right to contest the dischargeability of his debt under 11 U.S.C. § 523 and debtor's discharge under 11 U.S.C. § 727. However, this potential prejudice is easily remedied by affording [the creditor] a reasonable opportunity to file a complaint raising these issues." *In re*

entered its order reopening the case pursuant to 11 U.S.C. § 350(b). The hearing on the motion for leave to amend the schedules was conducted on June 15, 1989. The following are the Court's findings of fact and conclusions of law in this contested matter.

The Court has jurisdiction to hear and to determine the issues in this case pursuant to 28 U.S.C. § 157(b)(2)(A). Bankruptcy Rule 1009 provides that a debtor may freely amend a schedule "as a matter of course". In this circuit, the definitive case fleshing out a debtor's rights under this rule is *In re Rosinski*, 759 F.2d 539 (6th Cir.1985). There it was held that a debtor may be prevented from amending his schedule to include a creditor originally omitted only if it can be shown that the creditor was somehow prejudiced or if the debtor intentionally or recklessly avoided listing the creditor.

The only witness to testify was the debtor himself. His testimony was confusing, inconsistent and labored. What can be gleaned from his extended testimony is as follows. In 1985, he and Gregg Tolles were two of the major stockholders of a small business known as Office Business Systems Corp. In July, 1985 the company applied to become a dealer of Gestetner Corporation products. The debtor was required to fill out forms entitled "New Dealer Credit Application and Agreement", "Continuing Guarantee" (jointly admitted as Exhibit # 1) and another form which

was not produced in evidence. Although the debtor was literate in the English language, having graduated from high school and having attended two years of college, he claimed not to have understood that he became personally liable for the corporation's debt. *See, e.g., In re Meile*, 36 B.R. 719 (Bankr.S.D.Ill.1984). The second page of Exhibit # 1 states immediately above the line upon which the second of the debtor's signatures appears, the following: "Personal guarantees: In consideration of granting and/or continuation of credit by Gestetner or assignees hereunder, the undersigned, individually, jointly and severally, guarantee payment for all purchases made by Debtor and agrees to execute Gestetner's form of Continuing Guarantee." The third page of Exhibit 1 is the form previously identified as "Continuing Guarantee". It is an entire page of text which starts with the capitalized word "GUARANTEE". The first paragraph of the form states: "For and in consideration of Gestetner extending credit and continuing to extend credit to OFFICE BUSINESS SYSTEMS CORPORATION (hereinafter called "DEBTOR"), to induce GESTETNER to so extend credit and to continue to so extend credit to DEBTOR, the undersigned agrees as follows: 1. The undersigned hereby absolutely and unconditionally guarantees to GESTETNER, its successors and assigns, the full and prompt payment to GESTETNER, when due, or upon demand thereafter, of any and all indebted-

---

*Capuano*, 91 B.R. 715, 717 (Bankr.E.D.Pa.1988). A local rule, L.B.R. 108(c) (E.D.M.) provides redress to a creditor:

(1) When, 10 days or more before the commencement of the Section 341 meeting of creditors, a schedule is amended to add one or more creditors, the debtor shall serve a copy of the amendment and the statement upon the creditor(s) added, together with a copy of the notice of the Section 341 meeting of creditors, and shall also file a supplemental matrix, listing only the name(s) and address(es) of the added creditor(s).

(2) If the amendment adding a creditor is made later than 10 days before the commencement of the Section 341 meeting of creditors, then any time fixed for the filing of complaints under § 523 or § 727 shall automatically be extended to allow such creditor the same number of days in which to file such

a complaint as it would have had if it had been properly scheduled at the outset of the case, and a notice to this effect shall accompany the copy of the Section 341 meeting of creditors' notice sent by the amending party.

(3) If such an amendment is sought after the Section 341 meeting of creditors has commenced, the amending party shall either make a motion and request a hearing or shall serve the creditor(s) sought to be added with the proposed amendment and proceed pursuant to Rule 112. Creditor(s) added after the Section 341 meeting of creditors has commenced shall, unless the Court orders otherwise, be entitled, upon request, to examine the debtor under oath with any reasonable expense to be borne by the debtor.

This rule is consistent with *Rosinski* and relieves some of its harshness to creditors.

ness, obligations, and liabilities of DEBT-OR to GESTETNER of whatever nature...." At the bottom of the form, the debtor signed in his individual capacity with no corporate designation whatsoever. These forms were filled out on July 30, 1985.

In addition to this evidence, it was disclosed that the debtor and Mr. Tolles submitted their personal financial statements to Gestetner in connection with this application. The debtor explained the need for a personal financial statement as showing Gestetner that he was a "stable" individual capable of running a business. We simply do not believe this account; instead, we find that the debtor knew full well when he submitted the application that he was personally guaranteeing his corporation's debt to Gestetner.

The debtor also argued that since it was clear that the bankruptcy was going to be a no-asset case from the outset, he had no reason not to list the debt to Gestetner and to get a full and complete discharge of the balance due under the guarantee. Gestetner countered this assertion by eliciting from the debtor on cross-examination the fact that even after the debtor had filed personal bankruptcy, his corporation continued in business and continued to order new products from Gestetner. This additional information makes it clear that the debtor had a motive not to inform Gestetner of his personal bankruptcy.[2] It is quite likely that Gestetner would not have shipped new product to Office Business Systems Corp. had it known that a principal and a guarantor had just filed personal bankruptcy. This is the type of prejudice which *Rosinski* contemplates to be a bar to amendment under these circumstances. *See In re Harper*, 72 B.R. 211 (Bankr.S.D. Ohio 1987).

In short, we find that the debtor has satisfied neither prong of the *Rosinski* test. He either intentionally, or at least recklessly failed to scheduled Gestetner Corp. on his original bankruptcy schedules. Furthermore, his failure to schedule Ges-

tetner resulted in prejudice to the creditor. Accordingly, the debtor's motion to amend Schedule A–3 to list Gestetner Corp. will be denied. A separate order to this effect will be entered.

---

**2.** Indeed, since a large part of the debt to Gestetner was likely incurred post-petition, the debt

may very well be nondischargeable even if the debtor's motion is granted.