**In re Thomas Lee DAVID, Debtor.**

**Bankruptcy No. 86–07561.**

United States Bankruptcy Court,
E.D. Michigan, S.D.,
at Flint.

Oct. 17, 1989.

Jeffrey A. Chimovitz, Flint, Mich., for debtor.

Andrew J. Transue, Flint, Mich., for Jerome and Julia Lamparski.

## MEMORANDUM OPINION ON DEBTOR'S MOTION TO AMEND SCHEDULE

ARTHUR J. SPECTOR, Chief Judge.

The issue in this case is, after having reopened the closed Chapter 7 case, wheth-er the Court should permit[1] the debtor to amend his Schedule A–3 to list the creditors he omitted therefrom.

### Facts

On August 28, 1984, Thomas Lee David (hereinafter "the Debtor") and Thomas Henry jointly executed a note in the amount of $25,000 payable to the order of Jerome and Julia Lamparski. The Lamparskis' daughter was at that time married to Mr. Henry. The Lamparskis loaned the money for use by Mr. Henry and the Debtor in their corporate business venture.

The business failed. On January 31, 1986, the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. He filed schedules in bankruptcy which failed to list the Lamparskis. On February 19, 1986, the Debtor amended his schedules to add one creditor, Associates Commercial Corporation, which he failed to list previously. That creditor was then listed as possessing a $173,384.02 claim. On April 1, 1986, the Debtor once again amended his schedules, this time to add Second National Bank of Saginaw, another creditor he omitted originally, for a claim he alleged to be in the amount of $70,000. On April 10, 1986, the trustee filed a Final Report and Account of Trustee in Case Where No Distribution Is Made (a/k/a a No Asset Report). On May 14, 1986, the Debtor received his discharge in bankruptcy. On August 7, 1987, the case was closed.

On May 18, 1988, the Lamparskis filed suit against Mr. Henry and the Debtor in the Oakland County, Michigan, Circuit Court seeking a judgment for the more than $24,000 allegedly still owed them on the note. The Debtor was served on June 6, 1988. On June 28, 1988, the Debtor filed an answer to the state court complaint through Mr. Jeffrey Chimovitz, his attorney. Mr. Chimovitz had also represented

---

1. Since the amendment is sought after the case was closed, it seems that a motion is required. Bankruptcy Rule 1009 states: "A voluntary petition, list, schedule, statement of financial affairs, statement of executory contracts, or chapter 13 Statement may be amended by the debtor as a matter of course at any time before the case is closed." The Advisory Committee Note indicates: "If a list or schedule is amended to include an additional creditor, the effect on the dischargeability of the creditor's claim is governed by the provisions of § 523(a)(3) of the Code."

the Debtor in the 1986 bankruptcy case. The answer denied that the Debtor executed the note in question but did not assert the affirmative defense of discharge in bankruptcy. After some minimal discovery, the case was pre-tried and thereafter sent to mediation. The Debtor accepted but the Lamparskis rejected the mediation award. A new pre-trial conference was held on May 4, 1989. The trial was scheduled for July 14, 1989.

On July 12, 1989, the Debtor moved to reopen this bankruptcy case. On July 20, 1989,[2] this Court entered an order reopening the case. On August 1, 1989, the Debtor filed a "Motion to Amend Schedule A–3 to Add Unsecured Creditor." In the motion, the Debtor stated that "Debtor believed that a debt he had co-signed for had been satisfied or otherwise waived." The motion was served upon the Lamparskis, and on August 10, 1989, they filed an objection to the motion. The matter was set for hearing. On August 25, 1989, the Lamparskis filed a "Motion to Set Aside Ex Parte Order to Reopen".

On August 30, 1989, the Court heard the testimony of the Debtor and of Jerome Lamparski. The Debtor testified that he is an unemployed 34–year old accountant who subsists on welfare. He said that when he filed the bankruptcy petition, he did not believe he owed any money to the Lamparskis, and that was why he did not list them on his schedules. When the business was being started, he said, each of the co-venturers borrowed money from his own family. When the schedules were filed, he believed that neither was liable for the debt due to the other's family. He only learned to the contrary, he said, when shown the note during discovery in the lawsuit. He now acknowledges that he co-signed the note to the Lamparskis. The Debtor argues that these facts establish that his failure to list the Lamparskis on his sched-

ules was due to mere inadvertance or mistake, and so he should be allowed to amend Schedule A–3 to list them now.

Mr. Lamparski testified that he never received notice of the Debtor's bankruptcy until May, 1989, one year after he and his wife had filed suit to collect the debt. In the meantime, he had paid one attorney $777.50 and owes another $122.50 for proceeding in the collection action.

*Law*

This matter is within the core jurisdiction of this Court. 28 U.S.C. § 157(b)(2)(A), (I) and/or (O).

■ The reopening of a case is of no independent legal significance or consequence. Section 350 of the Bankruptcy Code simply states:

(a) After an estate is fully administered and the court has discharged the trustee, the court shall close the case.

(b) A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause.

The effect of this statute is merely to resurrect the court file from the stacks of the closed cases, or even from the archives, to enable it to receive a new request for relief. The legislative history on the provision is sparse, but it certainly does not contradict our benign interpretation. The Advisory Committee Note to Bankruptcy Rule 5010,[3] which implements § 350, states: "Although a case has been closed, the court may sometimes act without reopening the case. Under Rule 9024, clerical errors in judgments, orders, or other parts of the record or errors therein caused by oversight or omission may be corrected." This statement implies that the purpose for reopening a case is to allow the court to act on a substantive request for relief, and that the mere reopening, by

---

**2.** No information as to whether the state court suit was tried as scheduled on July 12, 1989 was ever provided to this Court.

**3.** Bankruptcy Rule 5010 states:
A case may be reopened on motion of the debtor or other party in interest pursuant to

§ 350(b) of the Code. In a chapter 7 or 13 case a trustee shall be appointed unless the court determines that a trustee is not necessary to protect the interests of creditors and the debtor or to insure efficient administration of the case.

itself, accords no independent relief. Accordingly, the Lamparskis' motion to set aside the order reopening the case will be denied.

■ What relief does the Debtor want? He claims to want to amend Schedule A–3 so he can list the Lamparskis. But what purpose does merely typing a name and address on an old piece of paper serve?

> The Debtor believes that reopening this case will accord [him] relief. Specifically, the Debtor believes that reopening the case and amending the schedules will bring the debts [he] intends to list in those amended schedules within the scope of [his] discharge. [He] believes that otherwise those debts will not be discharged and the creditors will be able to sue [him] to collect their debts.

*In re Mendiola,* 99 B.R. 864, 865 (Bankr.N. D.Ill.1989). However, the debtor's assumption is incorrect. As exhaustively and persuasively discussed recently by Judge Barliant in the *Mendiola* case, and before him by Judge Kressel in *In re Anderson,* 72 B.R. 495, 497 (Bankr.D.Minn.1987), reopening a closed case in order to amend schedules to add an omitted creditor is a useless act. "[R]eopening a case to allow amendment of schedules is futile. The debt in question was either discharged or excepted from discharge based on an analysis of § 523. Subsequent actions by the debtor cannot affect whether or not the debt has already been discharged." *Id. Also see In re Bowen,* 102 B.R. 752 (9th Cir.B.A.P. 1989); *In re Sung Il Kim,* 102 B.R. 787, 789 (Bankr.D.Hi.1989); *In re Crull,* 101 B.R. 60 (Bankr.W.D.Ky.1989); *In re Karamitsos,* 88 B.R. 122, 17 B.C.D. 1301 (Bankr.S.D.Tex.1988); *In re Ford,* 87 B.R. 641 (Bankr.D.Nev.1988); *In re Padilla,* 84 B.R. 194, 196, 18 C.B.C.2d 847 (Bankr.D. Colo.1987); *In re Henson,* 70 B.R. 363, 366 (Bankr.N.D.Ill.1987); *In re Jensen,* 46 B.R. 578 (Bankr.E.D.N.Y.1985); *In re Rediker,* 25 B.R. 71, 73 (Bankr.M.D.Tenn.1982); *Norton Bankr. Rules Pamphlet,* (1988– 1989 ed., Editor's Comment (1983), p. 317 ("The amendment [to the schedules to add a creditor] has no bearing whatsoever on the dischargeability *vel non* of the liability owed to the creditor.") What follows here is merely a summary of the cogent rationale of *Mendiola, Anderson* and the other opinions.

Section 727(b) of the Bankruptcy Code provides that a Chapter 7 discharge "discharges the debtor from all debts that arose before the date of the order for relief," except as provided in § 523. Section 523(a) provides that a discharge is not effective as to any debt:

> (3) neither listed nor scheduled under section 521(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit—
>
> (A) if such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing; or
>
> (B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request.

If, after the case is reopened, the creditor is not precluded from filing a proof of claim because the time for filing proofs of claim has not expired, *e.g.,* when the case is, like this one, a no-asset case, *see* Bankruptcy Rule 2002(e), the first predicate of § 523(a)(3) is not satisfied.

If the debt is one that would be non-dischargeable due to § 523(a)(2), (4) or (6), then, if the time within which to file a determination of non-dischargeability has expired, the debt is not discharged. 11 U.S.C. § 523(a)(3)(B). Clearly, the time within which to file a complaint for determination of non-dischargeability under § 523(a)(2), (4) or (6) has expired in this case as the deadline was May 5, 1986. However, to find out if § 523(a)(3)(B) applies, one still has to determine whether the debt was one that *would have been* non-dischargeable under § 523(a)(2), (4) or (6).

This issue is usually determined in the bankruptcy court as § 523(c)[4] places the exclusive jurisdiction to determine dischargeability under sections (a)(2), (4) and (6) there. However, since § 523(c) does not place the determination of non-dischargeability under § 523(a)(2), (4) or (6) within the exclusive jurisdiction of the bankruptcy court when the question arises in the context of a § 523(a)(3) challenge, the issue may be determined by a state court. *Mendiola*, 99 B.R. at 868, n. 6; *Anderson*, 72 B.R. at 497–498; *In re Coppi*, 75 B.R. 81 (Bankr.S.D.Iowa 1987); *In re Dabbs*, 72 B.R. 73 (Bankr.N.D.Ala.1987); *In re Iannacone*, 21 B.R. 153 (Bankr.D.Mass.1982); 3 *Collier on Bankruptcy*, ¶ 523.13[9] (15th ed. 1989).

■ Although we are convinced that there was no purpose for the Debtor to seek leave to amend his schedules and concomitantly, that there was no purpose for the Lamparskis to have opposed it, we are confronted by binding precedent which requires us to act. *In re Rosinski*, 759 F.2d 539 (6th Cir.1985). If the Debtor can establish that his failure to originally schedule the Lamparskis was due to inadvertence and that the Lamparskis would not thereby be prejudiced, we *must* grant the motion. *Id.*[5] We find that the Debtor showed that he "did not intentionally or recklessly avoid

listing the debt." *Rosinski*, 759 F.2d at 542.

The only prejudice which the Lamparskis can claim is the expense of litigating the collection suit for a year—$900.00. This, we think, is not the type of prejudice *Rosinski* contemplates as a bar to an amendment. *Cf. In re Clapp*, 103 B.R. 126 (Bankr.E.D.Mich.1989); *In re Harper*, 72 B.R. 211 (Bankr.S.D.Ohio 1987). This type of prejudice can easily be rectified by conditioning the granting of the motion upon the reimbursement of such fees to the creditor. Indeed, the Debtor here has offered to do that. Therefore, we find that the Lamparskis would not suffer any cognizable prejudice if the motion to amend is granted.

Having so found, under *Rosinski*, we are required to grant the motion. *See Henson*, 70 B.R. at 365–366. However, once the schedule is amended, the Lamparskis or the Debtor can litigate whether the claim is or is not of a type which would be non-dischargeable pursuant to § 523(a)(2), (4) or (6). As Bankruptcy Rule 4007(b)[6] provides that the creditor can file an action at any time for a determination of dischargeability under § 523(a)(3), the Lamparskis can file an action here seeking such a declaration, or as noted, may seek such a determination in a nonbankruptcy forum, e.g., state court.[7]

4. Section 523(c) states:
(c) Except as provided in subsection (a)(3)(B) of this section, the debtor shall be discharged from a debt of a kind specified in paragraph (2), (4), or (6) of subsection (a) of this section, unless, on request of the creditor to whom such debt is owed, and after notice and a hearing, the court determines such debt to be excepted from discharge under paragraph (2), (4), or (6), as the case may be, of subsection (a) of this section.

5. We think *Rosinski* does not declare that simply by adding the omitted creditor to the schedule, the debtor thereby obtains a discharge of the debt. "Under the Code, only the creditors' rights to participate in a dividend and to obtain a determination of dischargeability are of such importance that their loss mandates exception of a late scheduled debt from discharge.... In the case at bar, allowing amendment of a schedule to discharge Willard Boyd's debt does not negatively affect either of those rights." *Rosinski*, 759 F.2d 539, 542 (6th Cir.1985) (cite omitted). Thus it seems that the Court of Appeals agrees with the view of the Bankruptcy Rules

Advisory Committee, see n. 1, and acknowledges that the question of non-dischargeability is a separate question from whether the schedule may be amended to add a creditor. *Also see In re Henson*, 70 B.R. 363, 365–366 (Bankr.N.D.Ill. 1987).

6. Bankruptcy Rule 4007(b) states:
A complaint other than under § 523(c) may be filed at any time. A case may be reopened without payment of an additional filing fee for the purpose of filing a complaint to obtain a determination under this rule.

7. Even state courts are now aware of their concurrent jurisdiction in this area. *See First Community Bank of Frankfort v. Ohio Casualty Ins. Co.*, 154 Ill.App.3d 133, 107 Ill. Dec. 55, 506 N.E.2d 798 (1987); *State of New York Higher Educ. Services Corp. v. Quell*, 104 App.Div.2d 11, 482 N.Y.S.2d 373, 376 (N.Y.App.Div.1984) ("The general, long-standing Federal rule has been that where a creditor brings suit against the bankrupt after discharge, the question of whether the debt was discharged or falls within one of

To recapitulate, upon the Debtor's payment of the $900 attorney fees incurred by the Lamparskis during their year in state court litigation, the Debtor will be permitted to amend Schedule A-3 to list the Lamparskis. However, such an order will expressly state that it does not determine that the debt due the Lamparskis was or was not discharged.[8] An appropriate order will be entered forthwith.

the statutory exceptions to discharge is ordinarily one to be resolved by the local court in which the suit on the debt was brought.").

**8.** The Debtor may be forgiven for wondering why he should bother to pay the $900 just to get the right to amend a schedule—an act which we and other courts which carefully considered the issue believe to be futile. The debt to the Lamparskis *was discharged* on May 5, 1986, when the debtor received his discharge in bankruptcy *or it was not, and will not be, discharged* because it is of a type which fits within § 523(a)(2), (4) or (6).

We have experienced an increasing number of motions of this type. This is a trend noted in 1987 by Judge Kressell in Minnesota, *In re Anderson,* 72 B.R. 495, 496 (Bankr.D.Minn. 1987), Judge DeGunther in Illinois, *Henson,* 70 B.R. at 365 (Bankr.N.D.Ill.1987), and even as early as 1982 by Judge Paine in Tennessee, *In re Rediker,* 25 B.R. 71, 73 ("This court has in the past been besieged by applications similar to the debtor's in this case.") We, like Judge Kressell ("King Canute", *In re Anderson,* 72 B.R. at 496, 498), hope that this opinion will stem the tide of such motions. As Judge Barliant noted:

There are three ways to litigate dischargeability after a case is closed. First, if a creditor pursues a lawsuit on the claim, the debtor can assert the bankruptcy discharge as an affirmative defense and the court with jurisdiction over that lawsuit can decide whether the debt falls within any of the exceptions to discharge. Second, under Bankruptcy Rule 4007(b) either the Debtor or the creditor can move to reopen this case for the purpose of filing a complaint to determine dischargeability. Third, the Debtor can bring an action in this Court to enforce the discharge injunction against a creditor attempting to collect discharged claims, which is contained in 11 U.S.C. § 524(a). The virtue of any of these procedures, as opposed to a motion to reopen to amend schedules, is that it will focus on the real dispute (if there is a real dispute) between the parties—the dischargeability of the debt.

*In re Mendiola,* 99 B.R. 864, 870 (Bankr.N.D.Ill. 1989); *also see In re Karamitsos,* 88 B.R. 122, 17 B.C.D. 1301 (Bankr. S.D.Tex.1988); *Anderson, supra; Rediker, supra.*