**In re Barbara Gale PEACOCK, Debtor.**

**Barbara Gale PEACOCK, Plaintiff,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant.**

**Bankruptcy No. 89–12174.
Adv. No. 91–2057.**

United States Bankruptcy Court,
E.D. Michigan, S.D.
at Flint.

April 8, 1992.

Keith Kerwin, Flint, Mich., for plaintiff.

Steven O. Ashton, Plymouth, Mich., for defendant.

## MEMORANDUM OPINION ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

ARTHUR J. SPECTOR, Bankruptcy Judge.

On October 12, 1989 Barbara Gale Peacock (hereafter "Debtor" or "Plaintiff") filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code. She did not list any debt to State Farm Mutual Automobile Insurance Company (hereafter "State Farm" or "Defendant") in her schedules, nor was that creditor listed on the matrix. Accordingly, State Farm received no notice of the case. On September 6, 1991, the Plaintiff moved to reopen her case, which had been closed, per routine, in 1990. She alleged that State Farm had brought suit against her for an August 3, 1988 automobile accident involving a car which she owned but which was driven by another. As she had no insurance, the suit sought money from her directly. In her motion to reopen the case, the Debtor asserted that she had no knowledge of State Farm's claim and therefore that the omission of the claim from her schedules was "not due to any fault" of hers. She requested an order to reopen the case so that she could amend her schedules to belatedly list State Farm as a creditor. My order reopening the case, dated September 16, 1991, stated:

> She asked that the case be reopened to add the omitted creditor. Presumably, the Debtor's objective in doing so is to discharge the underlying debt. Simply adding State Farm to her schedules, however, would not accomplish that objective. *See In re David,* 106 B.R. 126, 129

(Bankr.E.D.Mich.1989). Reopening this case for the purpose of adding the omitted creditor is pointless, then, unless the Debtor also seeks a determination from this Court that the debt in question has in fact been discharged. *Id.* at 129–30. An adversary proceeding must be initiated in order to obtain such a determination. F.R.Bankr.P. 7001(6).

I therefore conditioned the reopening upon the Debtor's filing of an adversary proceeding for the determination of the dischargeability of the State Farm debt.

After entry of this order, the Plaintiff filed a complaint seeking a determination that her debt to State Farm had been discharged by the order of discharge which entered on January 17, 1990. State Farm answered the complaint and opposed the relief. The Plaintiff's motion for summary judgment was heard on March 25, 1992. As there is no dispute of material fact, this opinion sets forth solely my conclusions of law, pursuant to F.R.Bank.P. 7052.

The Defendant conceded that had its debt been properly scheduled at the outset of the case, it would have had no cause of action against the Plaintiff for nondischargeability based on 11 U.S.C. § 523(a)(2), (4) or (6).[1] Nevertheless the Defendant maintained that the Plaintiff knew or should have known about her potential liability to State Farm as early as December of 1988, which is when State Farm says it mailed her a letter asserting its claim. Because the Debtor recklessly omitted its claim from her schedules, the Defendant reasoned, she should be precluded from amending them now.

---

**1.** Originally, State Farm thought it might have had cause to contest dischargeability under § 523(a)(9). It now concedes that the facts do not support such a theory. In any event, even if State Farm had a basis for bringing a § 523(a)(9) challenge, the Debtor's failure to list State Farm on her schedules would not have prejudiced its right to litigate that issue. Pursuant to § 523(c) and F.R.Bankr.P. 4007, only those causes of action sounding under § 523(a)(2), (4) and (6) are barred 60 days after the first meeting of creditors; an (a)(9) attack is not subject to the deadlines. Moreover, (a)(9) questions fall within the concurrent jurisdiction of the state court. *In re Rose,* 86 B.R. 86, 91–92,

n. 6 (Bankr.E.D.Mich.1988); *In re Smith,* 83 B.R. 433, 436, 18 C.B.C.2d 622 (Bankr.E.D.Mich. 1988); *In re Anderson,* 74 B.R. 463, 464 (Bankr. E.D.Wis.1987); 3 *Collier on Bankruptcy,* ¶ 523.06 at p. 523–41 (15th ed. 1992) ("As to debts excepted from discharge other than those falling within the ambit of section 523(a)(2), (4), and (6) the bankruptcy court has original but not exclusive jurisdiction; its jurisdiction is concurrent with the appropriate local court."). Thus if the Debtor asserted the affirmative defense of discharge in the state court action, State Farm could have contended that § 523(a)(9) excepted the debt from discharge.

■ State Farm's argument confuses the issues of amending the schedules and the dischargeability of debt. My position on the (lack of) connection between these issues has been stated before. *See In re David, supra.* A simple example will highlight why the question of whether a particular debt appears on a schedule is often irrelevant to the determination of whether the debt is discharged.

Assume a debtor omits a debt for alimony, child support or last year's income taxes. No one would seriously argue that by merely reopening the case and amending the schedule to add the omitted creditor, the underlying debt is suddenly discharged. When the discharge entered, the debt either was or was not discharged. *David,* 106 B.R. at 131, n. 8; *In re Mendiola,* 99 B.R. 864, 868, 19 B.C.D. 440 (Bankr.N.D.Ill. 1989); *In re Anderson,* 72 B.R. 783, 16 C.B.C.2d 1539 (Bankr.D.Minn.1987); *In re Anderson,* 72 B.R. 495 (Bankr.D.Minn. 1987). The original listing of such debts would not discharge them, so how could the act of amending do so?

Moreover, no one would take the position that the omission bars the omitted creditor from filing a lawsuit to determine the dischargeability of its claim, or simply to enforce its claim. Nor should the debtor be precluded from defending that action with the affirmative defense of bankruptcy discharge. The debtor ought also be allowed to trigger the legal determination of whether the omitted claim was effectively discharged rather than waiting for the creditor to bring suit.

Dischargeability in this context arises under § 523(a)(3) if at all. As § 523(a)(3)(B) [2] applies only when the omitted claim is one which might have been excepted from discharge if the creditor had the opportunity to timely file a complaint under § 523(a)(2), (4) or (6), and as State Farm has conceded that it lacks such a cause of action, § 523(a)(3)(B) is inapplicable.

The next question is whether § 523(a)(3)(A) excepts State Farm's debt from discharge. Here the issue is whether the debt was "listed [ ]or scheduled ... in time to permit— ... timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing." *Id.*

Restated, § 523(a)(3)(A) excepts a creditor's debt from discharge unless either of the following conditions is established: (1) the debt is scheduled in time to permit the creditor to file a timely proof of claim; or (2) the creditor obtained notice or actual knowledge that the debtor filed for bankruptcy in time to permit the creditor to file a timely proof of claim.

■ This is a no-asset case, so a deadline for filing proofs of claim has not been set. And since State Farm, by now at least, has "actual knowledge" of the case, the second condition is clearly established: State Farm can now file a proof of claim which would be timely (no deadline having been established), if it so desires.[3] As an alternative, State Farm can request that its name be added to the matrix, so that it will receive notice from the clerk in the off chance that

**2.** Section 523(a)(3) reads in its entirety as follows:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(3) neither listed nor scheduled under section 521(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit—

(A) if such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing; or

(B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection,

timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request.

**3.** Since the case was closed with the determination by the trustee that no assets were available for distribution, filing a proof of claim would serve a purpose only in the extremely unlikely event that assets are subsequently discovered and the case is reopened. *See In re Thibodeau,* 136 B.R. 7, 9 (Bankr.D.Mass.1992); *In re Hunter,* 116 B.R. 3, 5 (Bankr.D.D.C.1990).

the case is subsequently reopened for the purpose of distributing newly discovered assets.

The important point here is that State Farm is in a position to timely assert its right to a portion of any distributions that might be made in this case, and that is sufficient to take it outside the scope of § 523(a)(3)(A). After all, the second condition in that subsection does not require that the omitted creditor actually exercise its option to file a timely claim: the exception to discharge created by (a)(3)(A) is rendered inapplicable by the mere fact that the creditor has notice or actual knowledge in time to do so. This is logical because the primary point in scheduling a creditor is to assure that the creditor receives notice of the bankruptcy filing. *See In re Walker,* 125 B.R. 177, 180 (Bankr.E.D.Mich.1990). Indeed, for purposes of § 523(a)(3), the notice is the *only* relevant function of scheduling a creditor; if it were not, then I presume that notice or actual knowledge of the bankruptcy filing would not serve as an acceptable substitute for timely scheduling of the creditor. For these reasons, it is clear that the debt to State Farm is not excepted from discharge on account of § 523(a)(3)(A).

State Farm's argument assumes that § 523(a)(3)(A) renders an omitted debt nondischargeable unless the debtor amends her schedules to add the omitted creditor. But the procedure of amending a debtor's schedules is relevant only to the first of the two conditions enumerated above: it has no bearing on the question of whether the second condition is established. If a creditor, like State Farm, has actual knowledge of a bankruptcy case in time to permit the filing of a timely proof of claim, then § 523(a)(3)(A) is rendered inapplicable regardless of whether the debt in question has been, or could be, added to the debtor's schedules.

Therefore, in a no-asset case like this one, to trigger the "unless" escape clause of § 523(a)(3)(A), all a debtor who belatedly realizes she has omitted a claim need do is

to ensure that the omitted creditor gets some form of notice or actual knowledge of the case, such as by mailing him a letter or telling him in person before a handful of credible witnesses. If the debtor prefers the more formalistic and expensive [4] approach, she can move, as the Debtor did here, under 11 U.S.C. § 350(b) to reopen the closed case and to amend the schedules. Even if the omitted creditor tries to resist the reopening or the amendment, simply by responding to the motion the creditor has put himself in an awkward position to argue that he has no such knowledge of the case. Another alternative for the debtor is to do nothing. If the creditor eventually sues to collect the debt, the debtor imparts "actual knowledge" of the bankruptcy to the creditor merely by asserting the bankruptcy discharge as a defense.

In summary, the Bankruptcy Code discharges debts which are never listed on a schedule. If a creditor has knowledge of the debtor's bankruptcy case in time to file a proof of claim and to bring a § 523(2), (4) or (6) cause of action, the omission of the claim is not a bar to its discharge. § 523(a)(3); 3 *Collier on Bankruptcy,* ¶ 523.13[5][a] (15th ed. 1992) ("[I]f the creditor had notice or actual notice [sic, knowledge] of the case in time to permit timely filing of the proof of claim, the debt will be discharged whether listed or scheduled or not."). "Under the Code, only the creditors' rights to participate in a dividend and to obtain a determination of dischargeability are of such importance that their loss mandates exception of a late scheduled debt from discharge." *In re Soult,* 894 F.2d 815, 817 (6th Cir.1990) (quoting *In re Rosinski,* 759 F.2d 539, 542 (6th Cir.1985)). Therefore, a debtor could vindicate her claim that the omitted creditor's debt was discharged without ever bothering to amend the schedules. It is obvious, then, that whether or not the omitted claim is ever listed on a schedule, the issue of dischargeability in a no-asset case like this involves only the substantive question of

---

**4.** A new filing fee and attorney fee will likely be

necessary.

the type of debt involved.[5]

State Farm's confusion regarding the significance of the recklessness issue may stem from the Sixth Circuit's decision in *Rosinski, supra.* In that case, the court stated that "Ms. Rosinski must advance some justification for the reopening [of her bankruptcy case] sufficient to show that she did not intentionally or recklessly avoid listing the debt." *Id.* at 542. Since *Rosinski* involved a debtor who sought a determination that an omitted debt was discharged, it is easy to see how the issues of recklessness and dischargeability might be confounded.

In *Rosinski,* the debtor had omitted a claim from her schedules. After the debtor received her discharge, the omitted creditor brought a collection suit against her in state court. Rosinski responded with a request, which was granted, that the creditor show cause why he should not be sanctioned for violating the injunction arising from the order of discharge. When the bankruptcy court found that the creditor had not received adequate notice of the case, the order to show cause was dissolved. Two weeks before the hearing, the debtor filed a motion for leave to amend her schedules to list the omitted claim. The hearing on that motion was held some weeks after the show cause hearing. The attorneys inexplicably argued that the determining factor in determining whether the debtor should be permitted to amend the schedules was whether the omitted creditor had received adequate notice. As

that issue had previously been decided against the debtor, the court denied the motion for leave to amend. The district court affirmed, and the debtor appealed to the court of appeals. At no time did anyone argue that the omitted claim was or was not already discharged.[6]

"Given the applicable standard of review" of findings of fact, the Sixth Circuit affirmed the lower court's finding of fact that the omitted creditor "did not receive adequate notice." 759 F.2d at 541.[7] Yet the court stated that the proper focus was not on the adequacy of the notice but on the substantive harm to the creditor. As the creditor could identify no harm if the schedules were amended to list his claim, the district court's affirmance of the bankruptcy court's order denying the debtor's motion to amend the schedules was reversed. The true issue in *Rosinski,* which was never discussed, was whether the omitted claim *was discharged* by the original order of discharge even though the creditor was deprived of notice of the case in time to file a proof of claim or a complaint seeking an exception to discharge under § 523(a)(2), (4) or (6). Fortunately, the court did explain that the creditor's right to file a proof of claim was not prejudiced because the case produced no dividend and the claim was "clearly dischargeable." 759 F.2d at 542. Thus despite the confusing comments in *Rosinski,* it is clear that the proper result was reached—namely, the omitted creditor could not proceed against the debtor.[8]

---

**5.** It must be recognized that when a debtor belatedly discovers that she has omitted a claim, it is still unknown whether the creditor will assert a basis under § 523(a)(2), (4) or (6) for an exception to discharge. Therefore, it is unclear whether paragraph (A) or paragraph (B) of § 523(a)(3) will be implicated. Hence, whenever an omitted claim is discovered, unless the creditor will stipulate that the debt is not excepted from discharge pursuant to § 523(a)(2), (4) or (6), it will necessitate either an adversary proceeding in the bankruptcy court or a trial in some other court of competent jurisdiction for the debtor to obtain the full relief she seeks, i.e., a determination that the debt was discharged.

**6.** This infirmity has been previously recognized. *See In re Mendiola,* 99 B.R. 864, 869 n. 7, 19 B.C.D. 440 (Bankr.N.D.Ill.1989) (Noting that, in

*Rosinski,* "the discharge issue was ... not addressed, but merely assumed.").

**7.** "Adequate notice" is nowhere defined in the opinion. Thus we do not know for what purpose the notice was inadequate.

**8.** Perhaps the reason the Sixth Circuit did not question the debtor's petition to amend in *Rosinski* was that it was determined to circumvent the inequity resulting from the bankruptcy court's erroneous conclusion that the debt was excepted from discharge pursuant to § 523(a)(3)(A) even though the creditor obviously had actual knowledge of the bankruptcy in time to file a timely proof of claim.

It is my view, though, that both the bankruptcy court's refusal to allow amendment, and the Sixth Circuit's ultimate order permitting it, were

The issues of schedule amending and dischargeability were confounded in *Rosinski* because of the lawyers' misunderstanding of the legal concepts and misplaced reliance on confusing comments in *Stark v. St. Mary's Hospital* (*In re Stark*), 717 F.2d 322 (7th Cir.1983).[9] In describing *Stark*, the Sixth Circuit noted that, "[a]fter the hospital filed suit and obtained a judgment, the Starks filed a motion for relief with the Bankruptcy Court seeking to reopen their estate in order to add, *and subsequently discharge*, the hospital's debt." *Rosinski*, 759 F.2d at 541 (emphasis added). But "typing a name and address on an old piece of paper", *David*, 106 B.R. at 129, does not discharge a debt, and the omission of a claim does not necessarily except it from discharge. The vehicle for discharging a debt is the order of discharge, which discharges some (but not all) listed debts and some (but not all) unlisted debts.[10]

Thus many cases have explained, as I did in my order reopening the present case, that amending a schedule to add a claim is pointless. *See, e.g., In re Thibodeau*, 136 B.R. 7, 10 (Bankr.D.Mass.1992); *In re Karamitsos*, 88 B.R. 122, 17 B.C.D. 1301 (Bankr.S.D.Tex.1988); *Mendiola*, 99 B.R. at 865; *see also In re Hunter*, 116 B.R. 3, 5 (Bankr.D.D.C.1990) ("[R]eopening the case merely to schedule the [omitted] debt is for all practical purposes a useless gesture."); *In re Anderson*, 72 B.R. at 497.[11]

Neither does *In re Soult*, 894 F.2d 815 (6th Cir.1990), the only other opinion by the Sixth Circuit Court of Appeals touching on this topic, detract from the above analysis. In *Soult*, the court started with the premise that the omitted claim was excepted from discharge on account of § 523(a)(3)(A) because the time to file a proof of claim had expired before the creditor holding the claim received notice of the case. It then made the startling statement that the bankruptcy court's order allowing the debtor to belatedly amend his schedules to add the claim caused that claim to "not [be] barred by the discharge." *Id.* at 817.

The problem with *Soult*, again, is not the result; it is the premise. The omitted claim was *not* excepted from discharge by § 523(a)(3)(A), as the court itself recognized later in the opinion. Although in that case a bar date for filing proofs of claim had been set and had passed by the time the unscheduled creditor received notice of the bankruptcy, the creditor was not prejudiced because the court explicitly found that he would have received no dividend in any event. *Id.* at 816 ("[I]f he had filed a timely proof of claim, however, Dr. Maddox would not have taken anything in the bankruptcy proceeding."). Therefore, as the court said:

> Dr. Maddox has not lost any meaningful right that he would have enjoyed if he had been properly listed in the first

---

irrelevant. I believe the appellate courts, (first the district court and then the court of appeals), should have dismissed the appeals *as moot* because no matter which way the appeals turned out, the late scheduling of a claim affected neither party's substantive rights.

9. It seems that the train began to run off the track when the lawyers in *Stark* misperceived the issue. The Seventh Circuit failed to put the train back on the track in time to prevent the analytical chaos which has ensued. *See In re Mendiola*, 99 B.R. at 868 ("The parties to *Stark* agreed to a statement of the case that said the debtors 'sought to have their estate reopened in order that the hospital's debt could be added and subsequently discharged.' 717 F.2d at 323. The parties and the lower courts all dealt with the issues as if the debt would not have been discharged unless the case were reopened and the name of the creditor added to the schedules. The Seventh Circuit simply acted on that unchallenged assumption.").

10. For example, it does not discharge listed debts for some taxes (§ 523(a)(1)), alimony or child support (§ 523(a)(5)), fines, penalties or forfeitures (§ 523(a)(7)), many student loans (§ 523(a)(8)), and injuries caused by drunk driving (§ 523(a)(9)).

It does not discharge an unlisted debt if the creditor was prejudiced by the lack of notice or actual knowledge of the bankruptcy in time to have allowed it to protect its substantive interests. 11 U.S.C. § 523(a)(3).

11. The exception to this rule occurs rarely. If assets should one day be discovered, the case could be reopened so the trustee could administer them. If the omitted creditor's claim is still not scheduled, he may not get the notice from the clerk to file a proof of claim and might thereby be prejudiced for purposes of § 523(a)(3). *See Thibodeau*, 136 B.R. at 10; *Hunter*, 116 B.R. at 5.

place. The bankruptcy court specifically indicated that if assets from which a dividend could be paid should ever be discovered, Dr. Maddox would be entitled to participate in the dividend. If Dr. Maddox wants to contest dischargeability, he can do that.

*Id.* at 817. Hence, notwithstanding the initial observation that, "[u]nder 11 U.S.C. § 523(a)(3)(A), Dr. Maddox's action was not barred by the discharge," the court's subsequent explicit findings to the contrary form the basis of the ultimate decision in *Soult.* These findings were correct, and so was the result—that the omitted claim *was discharged.*

The statement in *Soult* that "[t]he case could not be reopened, of course, if Dr. Soult's original failure to schedule the Maddox debt was willful, reckless, or fraudulent," *id.* at 818, was beside the point. Even assuming that Soult's original failure to list the claim was reckless, this would not have precluded Soult from pleading the affirmative defense of discharge in the state court lawsuit brought against him by the unlisted creditor.[12]

What makes both *Rosinski* and *Soult* misleading is that the debtors requested an inappropriate procedural tool to afford them relief. Had the debtors in *Rosinski* and *Soult* moved to reopen their cases to allow them to file adversary proceedings to determine whether the underlying omitted debts were discharged, as they should have

done, there would be no confusion concerning the significance of adding an omitted creditor. *See Anderson,* 72 B.R. at 496. For these reasons, it is best to disregard the talk of late amendment of schedules and to limit one's focus to the true issue: whether the unlisted creditor's debt is excepted from discharge on account of § 523(a)(3).[13] In so doing, counsel and trial courts would advance the proper development of this area of consumer bankruptcy law, without compromising the parties' substantive rights.

Because State Farm acknowledged that there was no statutory basis for excepting its claim from discharge under § 523(a), I hold that its claim *was discharged* by this court's order of discharge dated January 17, 1990. I further hold that whether or not the Debtor was reckless in omitting State Farm's claim is of no moment. Since no purpose is served in litigating that question, and for the reasons stated in *Anderson,* 72 B.R. 783, a separate order of summary judgment for the Plaintiff has been entered.

---

**12.** In response to Soult's affirmative defense of discharge in the creditor's lawsuit, the creditor could argue that his claim was excepted from discharge by § 523(a)(3). The state court would then decide whether the omission of the claim from the schedules prejudiced the creditor's substantive rights in a way delineated in § 523(a)(3). If it did, the court would rule against Soult's affirmative defense; otherwise, the court would dismiss the lawsuit because the claim had been discharged. Some courts have stated that the debtor bears the burden of proof on this issue. *See In re Haga,* 131 B.R. 320, 327 (Bankr.W.D.Tex.1991).

**13.** The trend noted previously by Judges Kressel, DeGunther and Paine unfortunately has not abated. Repetition of Judge Barliant's instruction to practitioners and courts alike therefore is still timely:

There are three ways to litigate dischargeability after a case is closed. First, if a creditor

pursues a lawsuit on the claim, the debtor can assert the bankruptcy discharge as an affirmative defense and the court with jurisdiction over that lawsuit can decide whether the debt falls within any of the exceptions to discharge. Second, under Bankruptcy Rule 4007(b) either the Debtor or the creditor can move to reopen this case for the purposes of filing a complaint to determine dischargeability. Third, the Debtor can bring an action in this Court to enforce the discharge injunction against a creditor attempting to collect discharged claims, which is contained in 11 U.S.C. § 524(a). The virtue of any of these procedures, as opposed to a motion to reopen to amend schedules, is that it will focus on the real dispute (if there is a real dispute) between the parties—the dischargeability of the debt.

*Mendiola,* 99 B.R. at 870.