**In re Beth Ann STUCKER, Debtor.**

**Beth Ann STUCKER, Plaintiff,**

**v.**

**CARDINAL BUILDING MATERIALS, INC., Defendant.**

**Bankruptcy No. 90 B 17966.
Adv. No. 92 A 01248.**

United States Bankruptcy Court,
N.D. Illinois, E.D.

April 8, 1993.

Edward J. Kuleck, Jr., Ottawa, IL, for Beth Ann Stucker, plaintiff.

James D. Lynch, Springfield, IL, for Cardinal Bldg. Materials, Inc., defendant.

### *MEMORANDUM OPINION*

JOHN H. SQUIRES, Bankruptcy Judge.

This matter comes before the Court on the complaint to determine dischargeability

filed by the debtor, Beth Ann Stucker (the "Debtor"), and the answer filed by one of her creditors, Cardinal Building Materials, Inc. (the "Creditor"). For the reasons set forth herein, the Court finds that the underlying debt has been discharged, notwithstanding the Debtor's failure to schedule the Creditor's claim, which is not of kind specified in 11 U.S.C. § 523(a)(2), (4) or (6). Although the Creditor did not have any notice or actual knowledge of the case until after the Debtor's discharge issued, as of yet, the bankruptcy estate has no assets from which a dividend could have been paid, and the Creditor has not been precluded from timely filing a proof of claim. Thus, the Creditor's claim is not excepted from discharge under section 523(a)(3)(A) or (B), but is discharged pursuant to 11 U.S.C. §§ 524(a) and 727(a) and (b).

## I. *JURISDICTION AND PROCEDURE*

The Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 and General Rule 2.33(A) of the United States District Court for the Northern District of Illinois. It is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

## II. *FACTS AND BACKGROUND*

The material facts of this matter are undisputed. The Debtor filed her Chapter 7 petition, schedules and statement of affairs on October 1, 1990. Although she listed various creditors on her schedules, she did not include this Creditor. Her schedules also showed her employment by a subsequent bankrupt, Diversified Home Services, Inc. ("Diversified"). A Chapter 7 trustee was appointed, and notice of a meeting of creditors under 11 U.S.C. § 341 was sent out. The notice further indicated that the case was a "no asset case", and instructed creditors not to file proofs of claim. It stated that creditors would receive subsequent notice if assets were later found upon which claims could be filed and dividends paid. The trustee filed a "no asset report" on December 19, 1990. Thereafter, a discharge order was subsequently entered on March 4, 1991. The case was closed on April 15, 1991.

Over a year later, in August 1992, the Debtor filed an application to reopen her bankruptcy case. The application disclosed that the Creditor was pursuing a claim against her in the Circuit Court of Sangamon County, Illinois. The Debtor asked to reopen the case solely to determine the dischargeability of the instant claim held by the Creditor. Over the Creditor's objection, pursuant to 11 U.S.C. § 350, the Court allowed the application in order to determine the dischargeability of the underlying claim.

The Creditor is the holder of the Debtor's guarantee by which in 1989 she guaranteed payment of all charges due the Creditor resulting from credit extensions made by the Creditor to Diversified. The Debtor alleged and testified at trial that she had inadvertently omitted scheduling the Creditor's claim under the guarantee because she was unaware of what she had admittedly signed. The Creditor principally defends on the ground that the underlying guarantee obligation owed by the Debtor did not arise until post-bankruptcy when judgment was entered against the Debtor in 1992. The Creditor argues that it was only after Diversified failed to pay its debt that the Debtor's liability accrued, thus resulting in the state court judgment against her totaling $31,996.00.

## III. *DISCUSSION*

The ultimate issue in this matter is whether the Creditor's unscheduled claim arising from the underlying guarantee in this no asset case has been discharged under 11 U.S.C §§ 524 and 727, or whether the claim and underlying debt are nondischargeable under 11 U.S.C. § 523(a)(3). Resolution of this issue involves application of the instructive dicta from *In re Mendiola*, 99 B.R. 864 (Bankr.N.D.Ill.1989). The narrow holding of *Mendiola* and its precursors and progeny is not outcome determinative of the ultimate issue here. *Mendiola* held that in a Chapter 7 no asset case, courts are not required to reopen a closed case in order to allow the debtor to amend schedules to add names of inadvertently omitted creditors. On that point, *Mendiola*

followed persuasive precedent and did not break new ground. *See In re Karamitsos,* 88 B.R. 122 (Bankr.S.D.Tex.1988); *In re Anderson,* 72 B.R. 495, 497 (Bankr.D.Minn. 1987); *In re Padilla,* 84 B.R. 194, 196 (Bankr.D.Colo.1987). As noted in those cases, the filing of an amended schedule of creditors post-discharge in a no asset Chapter 7 case has no effect on the dischargeability of the underlying unscheduled claim. This view has been followed by most of the recent cases. *See In re Grabinski,* 150 B.R. 427, 433 (Bankr.N.D.Ill. 1993); *American Standard Ins. Co. v. Bakehorn,* 147 B.R. 480, 483–484 (N.D.Ind. 1992); *In re Stecklow,* 144 B.R. 314, 319 (Bankr.D.Md.1992); *American Credit Services, Inc. v. Tucker,* 143 B.R. 330, 334 (Bankr.W.D.N.Y.1992); *Peacock Mut. v. State Farm Auto. Ins. Co.,* 139 B.R. 421, 423 (Bankr.E.D.Mich.1992); *In re Thibodeau,* 136 B.R. 7, 8 (Bankr.D.Mass.1992); *Chicago Midwest Credit Service Corp. v. Trovato,* 145 B.R. 575, 579 (Bankr.N.D.Ill. 1991); *In re Shipman,* 137 B.R. 524, 525 (Bankr.N.D.Fla.1991); *In re Musgraves,* 129 B.R. 119 (Bankr.W.D.Tex.1991); *In re Jongquist,* 125 B.R. 558, 560 (Bankr. D.Minn.1991); *In re Bulbin,* 122 B.R. 161 (Bankr.D.D.C.1990); *In re Candelaria,* 121 B.R. 140, 143 (E.D.N.Y.1990); *In re Moon,* 116 B.R. 75, 78 (Bankr.E.D.Mich.1990); *In re Hunter,* 116 B.R. 3 (Bankr.D.D.C.1990); *In re David,* 106 B.R. 126, 129–131 (Bankr. E.D.Mich.1989).

A minority of other courts permit case reopenings under 11 U.S.C. § 350 to allow amended schedules to be filed in the interest of completeness and accuracy, and because it also affords notice to the trustee who may subsequently find assets from which a dividend could be paid. *See In re Bilder,* 108 B.R. 666, 668 (Bankr.E.D.Wis. 1989); *In re Henson,* 70 B.R. 363, 366 (Bankr.N.D.Ill.1987).

The significance of *Mendiola* is in its extended discussion concerning the interplay between the discharge provisions under sections 524 and 727, and the operative text of the section 523(a)(3) exception to discharge. As analyzed in *Mendiola,* section 523(a)(3) does not end in the first paragraph of the text, but is limited by two subparts, (A) and (B). Sub-part (A) only protects a creditor's right to file a proof of claim, nothing else, if the underlying debt is not of a kind specified in section 523(a)(2), (4) or (6). The right to file a proof of claim is only meaningful in an asset Chapter 7 because it is the creditor's assertion of a right to participate in the distribution of assets of the estate. 99 B.R. at 867. Filed claims are the predicate upon which dividends in asset cases are paid. In a no asset case, such as the case at bar, unless the creditor has an underlying claim that is not of a kind specified in section 523(a)(2), (4) or (6), section 523(a)(3)(A) is not triggered because a no asset notice has been sent out and no claims bar date has been set. Where such a notice has been given, there can never be a time when it is too late to permit the timely filing of a proof of claim. *Padilla,* 84 B.R. at 195–196; *Karamitsos,* 88 B.R. at 123; *Mendiola,* 99 B.R. at 867. If assets of the bankruptcy estate are ever found upon which dividends can be paid, a new notice will be sent advising of a claims bar date and directing that proofs of claim be filed prior thereto.

The scope of sub-part (B) of section 523(a)(3) relates to claims based on underlying debts that would be nondischargeable under section 523(a)(2) (claims arising from false pretenses, fraud, or use of false financial statements); section 523(a)(4) (defalcation by a fiduciary; embezzlement or larceny); and section 523(a)(6) (willful and malicious injury). Sub-part (B) makes special provisions for these intentional tort claims which are subject to a strict time limit of sixty days after the first date set for the meeting of creditors within which a dischargeability complaint must be filed. Other exceptions to discharge are not so time barred. *See* 11 U.S.C. § 523(c); Federal Rule of Bankruptcy Procedure 4007(c). Creditors who have claims based on such intentional torts and who do not know about the bankruptcy case in time to file such complaints would be deprived of important rights to file such actions. Hence, Congress legislated the exclusions under

section 523(a)(3)(B). As pointedly noted in *Candelaria,* unless a creditor can show his debt actually comes within the exceptions provided for in section 523(a)(2), (4) or (6), there is no reason to deny the debtor the benefit of a full discharge simply because he inadvertently omitted a debt. 121 B.R. at 144.

*Mendiola* notes that there are three ways to litigate dischargeability after a case is closed: (1) if a creditor pursues a lawsuit on the claim, the debtor can assert the bankruptcy discharge as an affirmative defense and the court with jurisdiction over that lawsuit can determine the issue of dischargeability under section 523(a)(3); (2) under Bankruptcy Rule 4007(b) either the debtor or the creditor can move to reopen the bankruptcy case for the purpose of filing a complaint to determine dischargeability; and (3) the debtor can bring an action in the bankruptcy court to enforce the discharge injunction against the creditor attempting to collect the discharged claim pursuant to section 524(a). 99 B.R. at 870.

■ Some of the cases following *Mendiola* unfortunately tend to focus on the debtor's state of mind with regard to the reasons why the claim was not scheduled prior to case closing. For example, *Tucker* notes that in a no asset case intentional or reckless failure to schedule, or a fraudulent scheme, or intentional laches or other prejudice to the creditor should be considered. 143 B.R. at 334. Moreover, *Shipman* points out that once the case has been reopened, the burden is on the debtor to prove that the failure to schedule was not due to fraud or intentional design. 137 B.R. at 526. On the other hand, *Peacock* states that in a no asset case under the text of section 523(a)(3)(A), it does not matter how recklessly the debtor acted in omitting a claim if the creditor receives late notice of the case in time to file a claim should assets subsequently be discovered. 139 B.R. at 423. The Court submits that there is nothing in the text of section 523(a)(3)(A) or (B) which references a debtor's state of mind with regard to the omission in scheduling a creditor's claim. What is critical is whether or not there are assets from which a dividend can be paid on filed proofs of claim for purposes of section 523(a)(3)(A), and whether the omitted creditor's claim fits within either section 523(a)(2), (4) or (6) for purposes of 523(a)(3)(B).

The only remedy for intentional or other such omissions by debtors appears to be circumscribed within 11 U.S.C. § 727(d)(1). If a Chapter 7 debtor obtains a discharge through fraud and the party seeking to revoke the discharge did not know of the fraud until after the granting of such discharge, such party may seek revocation of the discharge within one year after such discharge is granted. 11 U.S.C. § 727(d) and (e)(1). As noted in *Bulbin,* the statutory scheme embodied in sections 523(a)(3) and 727(d)(1) and (e)(1) does not violate due process or serve as an abuse of the congressional discretion. 122 B.R. at 162. Any inability of creditors to invoke those statutory protections by virtue of late knowledge of the case arising from a debtor's omission from the schedule of creditors, is a matter which should be left to the wisdom of Congress, and is not a matter which furnishes a basis for relief from the time limit of section 727(e)(1). *Id.*

■ The Court rejects the principal defense of the Creditor that its claim only arose post-petition. The Debtor's pre-petition guarantee gave rise to a contingent claim as defined in 11 U.S.C. § 101(5) and buttressed by 11 U.S.C. § 101(10)(A). Thus, at the time the petition was filed, the Creditor had a claim, even though not fixed or liquidated, as to any final balance due, even if the Creditor had never called on the Debtor pre-petition to honor the guarantee. *See In re Helen Gallagher Enterprises, Inc.,* 126 B.R. 997, 1000 (Bankr.C.D.Ill. 1991); 1 Ginsberg and Martin, *Bankruptcy: Text Statutes Rules,* § 10.03[d] at 10–14 (3d ed. 1992). The contingent claim arises from the moment of the execution of the guarantee. *Gallagher,* 126 B.R. at 1000; *see also Kapela v. Newman,* 649 F.2d 887 (1st Cir.1981); *In re Sprague,* 104 B.R. 352 (Bankr.D.Or.1989). The contingency of the Creditor's claim against the Debtor at the time this case was filed is of

no consequence. The fact that the Creditor's underlying claim has not been alleged to be and does not fall within one of the types of nondischargeable claims under section 523(a)(2), (4) or (6) is of significance. Accordingly, the Creditor's claim has been discharged in these proceedings pursuant to sections 524(a) and 727(a) and (b), and is not nondischargeable under section 523(a)(3)(A) or (B).

The case authorities cited by the Creditor are inapposite and not controlling. *In re Eliscu*, 85 B.R. 480 (Bankr.N.D.Ill.1988) involved a creditor's motion for an extension of time in which to file objections to discharge and complaints as to dischargeability. The creditor in *Eliscu* did not learn of the case until after the filing deadlines had expired under Bankruptcy Rule 4007. The court allowed the motion on the basis of due process concerns under the Fifth Amendment to the United States Constitution. *Eliscu* did not involve any issues of the construction or application of section 523(a)(3).

Similarly, the other cases cited by the Creditor are inapposite because they involved application of the text of Section 17(a)(3) under the former Bankruptcy Act. *In re Davenport*, 18 B.R. 491 (Bankr.D.Vt. 1982) held that unscheduled debts were not dischargeable under section 17(a)(3). The text of section 523(a)(3) under the Bankruptcy Code, however, is markedly different as are its effects.

*In re Swain*, 21 B.R. 594 (Bankr.D.Conn. 1982) held that the debtor was not entitled to reopen the case post-discharge and closing to amend schedules to list three creditors previously omitted. *Swain* briefly looked to the legislative history to conclude that it found nothing to indicate the changes in the language from section 17(a)(3) to section 523(a)(3) were meant to overrule the holding in *Milando v. Perrone*, 157 F.2d 1002 (2nd Cir.1946). *Milando* held that cases could not be reopened in order to list inadvertently omitted creditors. Neither case is a controlling precedent in the Seventh Circuit, and this Court is of the view that the approach taken in *Mendiola*, after careful consideration of *In re Stark*, 717 F.2d 322 (7th Cir.1983), takes the better reasoned and more persuasive approach.

■ The end result here is consistent with the operative text of sections 523(a)(3), 524 and 727. The Creditor's claim against the Debtor has been discharged, and its subsequently obtained judgment against her is accordingly void under section 524(a)(1). Section 524(a)(1) voids any judgment at any time obtained to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727. This result does not offend any constitutional due process concerns because both parties have had notice and an opportunity for hearing, followed by a trial on the merits on the underlying dischargeability determination. Thus, the real essence of constitutional due process has been fulfilled.

In short, the Court is making the dischargeability determination now of a claim affected by the prior discharge order. This sequence of events which have occurred post-case closing is not the preferable route like that employed in most cases where the parties seek an earlier determination. The result, however, has not deprived the Creditor of its right to file a claim should assets be hereafter found in accord with the provisions of section 523(a)(3)(A), nor has it lost anything under section 523(a)(3)(B), as its underlying claim does not fit within any of the exceptions under section 523(a)(2), (4) or (6). For the Debtor's omission in failing to timely schedule this claim and afford the Creditor the earlier notice her other creditors received, she has incurred and must bear the attendant court costs and attorney's fees of maintaining this action. Such expense is a fair burden for her omissions, whether inadvertent or otherwise.

## IV. CONCLUSION

For the foregoing reasons, the Court finds the underlying claim of the Creditor has been discharged. The judgment subsequently rendered in favor of the Creditor against the Debtor by the Circuit Court of

Sangamon County, Illinois, is void pursuant to 11 U.S.C. § 524(a)(1).

This Opinion serves as findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.