**In re Barry Martin WEINTRAUB, M.D., Debtor.**

**Bankruptcy No. 92 B 41210 (JLG).**

United States Bankruptcy Court, S.D. New York.

Aug. 30, 1994.

---

Robinson Brog Leinwand Reich Genovese & Gluck, P.C., New York City, for debtor.

Finz & Finz, New York City, for Nancy Simkin, a/k/a Nancy Wright.

Levien & Zwal, New York City, for Bella Davarshvili.

## MEMORANDUM DECISION DENYING MOTION TO REOPEN NO ASSET CHAPTER 7 CASE

JAMES L. GARRITY, Jr., Bankruptcy Judge.

By order of this court dated on or about August 19, 1992, Dr. Barry Martin Weintraub, a voluntary chapter 7 debtor, obtained a discharge in bankruptcy pursuant to § 727 of the Bankruptcy Code ("Code"). Before us is his motion dated April 15, 1994, for an order pursuant to § 350(b) of the Code reopening his no asset chapter 7 case in order to permit him to add the names of fifteen creditors to the schedule of creditors annexed to his chapter 7 petition. He seeks that relief in order to obtain a discharge of the claims of those creditors. Bella Davarshvili and Nancy Wright, former patients of Weintraub who have malpractice actions pending against him in the New York State Supreme Court, object to the motion. We conducted an evidentiary hearing on this matter on August 23 and 26, 1994. For the reasons set forth herein, the motion is denied in all respects.[1]

*Facts*

On February 27, 1992, Weintraub filed a voluntary petition under chapter 7 of the Code. Among the documents filed with the petition was a two page Matrix of Creditors ("matrix") consisting of the names of fifteen creditors. The § 341 meeting of creditors was convened on or about March 20, 1992. The last day to file objections to Weintraub's discharge was June 19, 1992. No objections were filed and by order dated August 19, 1992, Weintraub obtained his discharge. The case was closed on August 28, 1992.

1. This Memorandum Decision constitutes our findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(c) as made applicable herein by Fed.R.Bankr.P. 7052 and 9014. Our subject matter jurisdiction of this motion is predicated on 28 U.S.C. §§ 157(a) and 1334(b) and the "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court for the Southern District of New York, dated July 10, 1984 (Ward, Acting C.J.). This is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(B) & (I).

An objection to this motion also was filed on behalf of G & L Development ("G & L"), an entity purporting to be among Weintraub's largest creditors. At the evidentiary hearing, Weintraub advised that he was amending his motion to exclude G & L. G & L did not appear at the hearing.

The docket sheet shows that on or about January 14, 1994, Weintraub filed a motion pursuant to § 350(b) of the Code to reopen his case. That motion was returnable on February 2, 1994 and was opposed by Davarshvili and Wright. Weintraub apparently withdrew that motion because on or about April 15, 1994, he filed the motion presently before us.

## Discussion

■ A chapter 7 debtor must file a list of creditors. *See* 11 U.S.C. § 521(1). Strict adherence to that provision of the Code is not merely good form; the discharge available under § 727 of the Code to an otherwise qualified chapter 7 debtor does not extend to unscheduled debts. *See* 11 U.S.C. § 523(a). Accordingly, it is self evident that a debtor must exercise great care in compiling his list of creditors. *See In re Gilbert,* 38 B.R. 948, 950 (Bankr.N.D.Ohio 1984); *In re Lorenzen,* 21 B.R. 129, 131 (Bankr.N.D.Ohio 1982).

■ Section 350(b) provides that a closed case may be reopened "to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b). Debtors frequently seek relief under § 350(b) to schedule creditors omitted from their petitions. To be eligible for that relief, a debtor must demonstrate that his failure to list the omitted creditor(s) in the petition, as filed, was neither intentional nor reckless. *See, e.g., In re Rosinski,* 759 F.2d 539, 541–42 (6th Cir.1985) (omission of name of brother of deceased creditor, who died postpetition, was neither intentional nor reckless where debtor had been told by creditor's attorney that he represented both creditor and brother; that fact, coupled with the familial relationship lead debtor to reasonably assume that brother had received notice); *In re Noa,* 81 B.R. 130, 131–32 (Bankr.S.D.Fla.1987) (court found that debtor intentionally failed to list creditor where debtor moved secured creditor's collateral from Michigan to Florida in contravention of loan agreement, established at least seven different places of residence in four years, avoided service of process nineteen times over a ten day period, and admitted that he had learned of secured creditor's judgment against him before his bankruptcy

case had closed); *In re Gray,* 57 B.R. 927, 930 (Bankr.D.R.I.), *aff'd,* 60 B.R. 428 (D.R.I. 1986) (debtor's omission held to be intentional where evidence supported the conclusions that he deliberately left out certain creditors in an attempt to preserve them as future sources of business). Thus, debtor "shall be held to the standard of using reasonable diligence in ascertaining the names and addresses of all his creditors". *In re Lorenzen,* 21 B.R. at 131.

In his moving papers Weintraub placed the blame for his failure to list the names of all his creditors in his petition at the feet of Yann Geron, Esq., the attorney who represented him in his chapter 7 case. In an affidavit submitted in support of his motion, Weintraub swore that prior to the filing of his chapter 7 petition he prepared a series of creditor lists which were aggregated by Geron into a master list containing the names of all his creditors. *See* Affidavit of Barry Martin Weintraub sworn to March 15, 1994 ("Aff.") at ¶ 2 and Ex. A. He states that he believed Geron included the names of all the creditors identified in the master list in the Matrix of Creditors ("matrix") annexed to the petition and that he signed the petition under that belief. Aff. at ¶ 3. He further avers that after he filed his petition he learned that the names of all the creditors in the master list were not included in the matrix. He surmises that the omission resulted from a malfunction of Geron's word processor because an entire typed page of the master list was omitted from the matrix. Aff. at ¶ 4. Indeed, when the so-called master list (Aff. at Ex. A) is compared with the matrix (Aff. at Ex. B), Weintraub's explanation for the problem seems quite plausible. That is because the matrix tracks the master list for the first fifteen entries. Weintraub claims that he informed Geron of the problem, that Geron compiled an Amendment to Schedules which listed the names of the creditors omitted from the petition, that Weintraub signed the amendment, but that Geron did not file it. Aff. at ¶¶ 5, 6 and Ex. C.

During the evidentiary hearing, Geron testified pursuant to a subpoena issued on behalf of Nancy Wright. His testimony, which we fully credit, and which was buttressed by

documentary evidence he produced at the hearing pursuant to that subpoena, paints an entirely different picture of why creditors were omitted from Weintraub's petition and the steps taken by Weintraub to rectify the problem.[2] Geron testified that debtor retained him in late February 1992 for the purpose of filing a chapter 7 petition. At Geron's instruction, Weintraub compiled a list of creditors which Geron reviewed with Weintraub during a meeting in Geron's office. Among others, that list included Wright, but not Davarshvili. *See* Wright Ex. 3[3]. Geron explained that he had a long discussion with Weintraub about the scope of his list of creditors and counselled him that he should include former and current patients. Geron testified that Weintraub advised that he wished to avoid informing his patients about the chapter 7 petition and that against Geron's advice, Weintraub instructed that the matrix not include Nancy Wright, among other former patients. *See also* Wright Ex. 3. On February 27, 1992, Geron caused Weintraub's petition to be filed with the Court and by letter dated March 5, 1992, he forwarded Weintraub a copy of the petition. In that letter he advised that "if you wish to revise the bankruptcy schedules, you may do so at any time before the case is closed." He admonished, however, "that the schedules be amended as soon as possible." Wright Ex. 9.

On or about April 14, 1992, Weintraub advised Geron that the matrix was incomplete. That advice apparently was prompted by Weintraub's receipt of an interest bill sent to him by City National Bank of Beverly Hills, California. *See* Wright Ex. 5. The bill showed that Weintraub was indebted to City National Bank in the approximate sum of $4,000. *Id.* Geron spoke with Weintraub

and Weintraub's assistant Linda Guihan and advised them that before he could file an amendment to the chapter 7 petition, he had to have a complete list of the creditors Weintraub sought to add to his petition. On July 22, 1994, Weintraub sent Geron an incomplete list of creditors. *See* Wright Ex. 6. At Geron's direction Weintraub revised the list and on or about July 24, 1992, delivered a complete list of creditors to Geron. *See* Wright Ex. 7. On July 27, 1992, Geron caused an "Amendment To Schedules Adding Creditors" to be sent to Weintraub. It listed the names of the creditors Weintraub had identified in Wright Ex. 7. As such, it contained Nancy Wright's name but not the name of Bella Davarshvili. *See* Wright Ex. 7 and 8. Weintraub did not return the document to Geron until August 27, 1992 (more than one week after debtor received his discharge), despite numerous attempts by Geron to obtain it. *See* Wright Ex. 8, 10 and 12. Geron immediately advised Weintraub that because Weintraub had received a discharge, he could not amend his schedules as of right and would have to petition the court for leave to do so. *See* Wright Ex. 10. Although he offered to assist Weintraub in moving the court for leave to amend his schedules, *id.*, he testified that Weintraub waited for more than one year before seeking Geron's assistance. Ultimately, Weintraub retained Robinson Brog to file the motion.

Based on Geron's testimony and the documents he produced at trial, we find that Weintraub knowingly and intentionally omitted creditors from his petition. Further, at best, he was grossly negligent in failing to amend his schedules prior to his receipt of his discharge. Finally, Weintraub has established no justification for waiting more than

---

**2.** At the outset of the second day of the evidentiary hearing, Weintraub announced that he had terminated the services of his counsel, Robinson Brog Leinwand Reich Genovese & Gluck, P.C., ("Robinson Brog") and that he would proceed *pro se*. He produced a letter dated August 25, 1994, to that effect. *See* Debtor's Trial Exhibit E. This development occurred at a time that Wright was beginning her cross-examination of Weintraub. We summoned counsel from Robinson Brog to appear and directed that he remain at counsel table to offer assistance to Weintraub. *See* Local Rule of Bankruptcy Procedure 4(c).

Geron testified over Weintraub's objection that his testimony violated the attorney-client privilege. We found no merit to that objection because by putting Geron's actions and advice with respect to the preparation and amendment of the petition at issue, Weintraub waived the privilege as to those matters. *See e.g., Standard Chartered Bank, PLC v. Ayala International Holdings (U.S.), Inc.,* 111 F.R.D. 76, 79–80 (S.D.N.Y.1986).

**3.** "Wright Ex." refers to the exhibits offered by Wright at the hearing and entered in evidence.

eighteen months before bringing this matter to the court.

Moreover, we find that Weintraub's testimony both at trial and in his affidavit was fabricated in an effort to place the blame for his intentional failure to include all his creditors in his matrix at the feet of Geron. We reach that conclusion based on our review of Geron's testimony, the documents produced by Geron at trial and Weintraub's trial testimony. Although accorded the opportunity to rebut Geron's testimony, Weintraub failed to do so. Indeed, he made no effort to refute Geron's recitation of the facts other than to deny that he advised Geron to exclude former patients from the matrix filed with the petition. We do not find Weintraub's version of the facts to be credible. Further, even if Geron's failure to list those creditors in the matrix was contrary to Weintraub's instructions, Weintraub failed to provide a defensible reason for why he did not notice the error when he reviewed and signed the petition. Weintraub's testimony actually establishes that he did not carefully review the matrix when he signed his petition.

Weintraub did make much of Geron's alleged offer to shoulder the blame for the failure to file an accurate matrix. Geron denies extending such an offer. We do not find Weintraub credible on that score. Moreover, the documentary evidence supports the conclusion that such an offer was not made because it evidences the efforts undertaken by Geron to ensure that Weintraub filed accurate schedules. *See* Wright Ex. 9, 10 and 12. However, even if there is merit to the assertion it only helps to account for the delay in filing this motion. It does not prove that Weintraub's failure to file an accurate petition was excusable.

Weintraub concocted his testimony in a misguided and apparently illegal effort to advance the merits of his motion. In doing so it appears that he has attempted to perpetuate a fraud on this court in direct violation of 18 U.S.C. § 152. We will make the appropriate referral to the Office of the United States Attorney. *See* 18 U.S.C. § 3057.

*Conclusion*

Debtor's motion is denied in all respects.