**In re Mario CRUZ and Mercedes Cruz, Debtors.**

**No. 97–B–40236 (AJG).**

United States Bankruptcy Court,
S.D. New York.

June 21, 2000.

Dennis J. O'Sullivan, Flushing, for Mario Cruz.

Law Offices of Bernard D'Orazio, P.C., New York, of Counsel: Bernard D'Orazio, for Enterprise Auto Sales Corporation.

**MEMORANDUM DECISION GRANT-ING IN PART, AND DENYING IN PART, DEBTOR'S APPLICATION FOR ORDER REOPENING CASE, ALLOWING THE AMENDMENT OF SCHEDULE F, AND FINDING ENTERPRISE AUTO SALES CORP. AND BERNARD D'ORAZIO IN CONTEMPT OF COURT**

ARTHUR J. GONZALEZ, Bankruptcy Judge.

This matter came before the Court upon the Application for Order Reopening Case, Allowing the Amendment of Schedule F, and Finding Enterprise Auto Sales Corp. and Bernard D'Orazio in Contempt of Court (the "Application") filed on behalf of Mario Cruz (the "Debtor" or "Mr. Cruz") and upon Enterprise Auto Sales Corporation's ("Enterprise") opposition thereto. Upon consideration of the pleadings filed in this matter and the arguments raised and presented during the hearings in this matter, the Court makes the following findings of fact and conclusions of law.

## FACTS

Mario Cruz and Mercedes Cruz ("the Debtors") filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Bankruptcy Code ("Bankruptcy Code") on January 13, 1997. Subsequent to the meeting of creditors held on February 19, 1997, the Chapter 7 trustee, Hal M. Hirsch, Esq., filed a report of no distribution, deeming this bankruptcy case a "no asset" case.[1] The Debtors received their discharge on May 7, 1997 and the bankruptcy case was closed on May 19, 1997.

In late 1998 a summons and complaint were issued on behalf of Enterprise upon the Debtor[2] seeking recovery of a prepetition car loan debt in the Civil Court of the City of New York (the "State Court"). Upon learning of the issuance of the summons and complaint, Mr. O'Sullivan, attorney for the Debtor, forwarded documents evidencing the aforementioned discharge to Mr. D'Orazio, attorney for Enterprise. Thereafter, Mr. D'Orazio informed the Debtor by letter that Enterprise intended to continue to pursue its claim in State Court because Enterprise was never notified of the bankruptcy.

A judgment of default (the "Default Judgment") was entered by the State Court against Mr. Cruz on January 28, 1999[3] in the amount of $8,747.27 including interest and costs and disbursements. On April 7, 1999, the Debtor, upon advice of counsel, applied for an Order to Show Cause to Vacate Default Judgment and to Restore to the Calendar and/or to Dismiss (the "Order to Show Cause") with the State Court. Upon the return date of the Order to Show Cause, Mr. D'Orazio, as counsel to Enterprise, and the Debtor, pro se, appeared before the Court. According to counsel for Enterprise, the State Court suggested that settlement discussions ensue. The Debtor ultimately agreed to a settlement with Enterprise in the total amount of $7,500.00, payable at the rate of

---

1. Consistent with procedures regarding no asset cases in this district, a bar date was not established in this case.

2. The defendants listed in the complaint are Mario Cruz and Roman Rodriguez. It has been represented to the Court that Roman Rodriguez is Mario Cruz's son. The underlying debt to Enterprise results from the financing of a car purchase by Roman Rodriguez in which the Debtor cosigned the loan with his son obligating them as codebtors to Enterprise. Roman Rodriguez is not a party to the matter before the Court and will not be referred to hereinafter.

3. Enterprise claims that the Default Judgment was entered on January 28, 1998, and that the Debtor did not move to vacate the Default Judgment in the State Court action for over one year, on April 7, 1999. However, upon examination of Exhibit C to Enterprise's Memorandum of Law in Opposition to Debtors' [sic] Motion to Reopen the Case and For Other Relief, the Default Judgment is dated January 28, 1999. The 1999 date is consistent with the issuance of the summons and complaint in November 1998.

$200.00 per month, without interest. A settlement agreement (the "Settlement Agreement") was signed by the Debtor before a notary public. Apparently, the Debtor participated in the settlement discussions and signed the Settlement Agreement without seeking further advice from counsel. There was no evidence presented to the Court that any payments were made pursuant to the Settlement Agreement.

Thereafter, counsel for the Debtor filed the Application, and this Court heard arguments from counsel. Following the hearing, the Court informed the parties that it wanted further information concerning the events surrounding the State Court proceeding. The parties submitted additional pleadings and documentation, with the last submission being provided in February 2000. With that submission the record was closed. As to the actions of the State Court regarding the Settlement Agreement, Mr. D'Orazio represents that he informed the State Court clerk of the settlement, however he found no evidence that the State Court (1) participated in or approved the actual settlement, (2) reviewed the Settlement Agreement or (3) "so ordered" any part of the record.

## DISCUSSION

The Debtor requests that the Court reopen the case to add Enterprise as a creditor pursuant to 11 U.S.C. § 350(b)[4] and hold Enterprise and its counsel, Mr. D'Orazio, in contempt pursuant to §§ 105 and 524(a)(2) and award actual damages, costs, attorneys' fees and punitive damages to the Debtor.

In seeking to reopen the bankruptcy case pursuant to § 350(b) to amend Schedule F and include Enterprise as a creditor and list the debt owed to it, the Debtor argues that by operation of law, the debt to Enterprise was discharged pursuant to § 727(b), and that § 523(a)(3) does not preclude the discharge of the Enterprise

debt. Further, the Debtor maintains that the Settlement Agreement is unenforceable because it fails to comply with the requirements of § 524(c) and (d) regarding reaffirmation agreements.

Enterprise argues that since the debt owed to Enterprise was not listed in the Debtors' Chapter 7 bankruptcy case it was not discharged. Enterprise cites § 523(a)(3)(A) as support. Further, it argues that because the Debtor raised and resolved the issue before the State Court, by entry into the Settlement Agreement, he is precluded from rearguing it before this Court.

*Reopening of Bankruptcy Case to Amend Schedules*

■ Regarding the Debtor's request to reopen the bankruptcy case to list Enterprise, he seeks that relief even though he contends that the Enterprise debt was already discharged by operation of law. Apparently, the Debtor seeks this relief based upon either the view that reopening the case and listing Enterprise will have some unspecified effect upon the status of the dischargeability of the debt, or the view that the reopening of the case to list Enterprise will provide an accurate reflection of the debts that were discharged in the event any question arises in the future about what debts were discharged. The Debtor cites § 350(b) in support of his motion to reopen the bankruptcy case. Section 350(b) provides that:

A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause.

The Bankruptcy Code does not define "cause," and the decision to reopen a case is discretionary with the Court. *In re Chalasani*, 92 F.3d 1300, 1307 (2d Cir. 1996). Many courts have addressed the effect of a failure to list a creditor in a Chapter 7 no asset case and have rendered

---

**4.** Hereinafter, references to sections are to Title 11 of the United States Code unless otherwise indicated.

varying decisions concerning the discharge of such unlisted debts in the context of a motion to reopen a bankruptcy case. Ultimately the decision to reopen the case will depend on whether the unlisted debt, assuming it is not a § 523(a)(2), (4) or (6) debt and this is a "no asset" case, was discharged as a matter of law under the § 727(b) discharge order (the "Discharge Order") or determined to be discharged based upon consideration of the circumstances surrounding the failure to list the debt. Therefore, this Court will address the discharge issue before it determines whether cause exists under § 350(b).

*Res Judicata, Collateral Estoppel, Judicial Estoppel, Rooker–Feldman Doctrine*

■ At first blush it would appear that the preclusionary rules of res judicata, collateral estoppel, judicial estoppel or the Rooker–Feldman doctrine [5] would prevent the Court from reviewing the actions of the State Court or the Settlement Agreement that resolved the State Court action since the Debtor had clearly submitted to

its jurisdiction and had raised the issue this Court is now being asked to decide. However, those preclusionary rules, for the reasons discussed hereinafter, would not be applicable if, as a matter of law, an unlisted debt in a "no asset" case is discharged by the discharge order and the provisions of § 524 either (1) void any judgment that is a determination of the personal liability of a debtor with respect to a discharged debt, or (2) render unenforceable any agreement, pertaining to that debt, that did not comply with its provisions.

*Section 727(b) Discharge*

■ Pursuant to § 727(b), a discharge in a Chapter 7 case discharges a debtor from all debts arising before the filing of the bankruptcy petition, except those that are excepted from discharge. Section 727(b) states as follows:

> Except as provided in section 523 of this title, a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of

---

5. The Rooker–Feldman doctrine in a bankruptcy case is implicated when a bankruptcy issue is raised in the state court and thereafter either before or after the state court has determined the matter, the same issue is raised in the bankruptcy court. The Rooker–Feldman doctrine concerns the court's subject matter jurisdiction, or lack thereof, and may be raised at any time. *See Moccio v. New York State Office of Court Administration,* 95 F.3d 195, 198 (2d Cir.1996) (challenge based upon Rooker–Feldman may be raised at any time by either party or sua sponte by the court). The Rooker–Feldman doctrine arose from two United States Supreme Court decisions, decided sixty years apart, which provide that:

> the lower federal courts lack subject matter jurisdiction over a case if the exercise of jurisdiction over that case would result in the reversal or modification of a state court judgment. Such jurisdiction is lacking because within the federal system, only the Supreme Court may review a state court judgment.

*Hachamovitch v. DeBuono,* 159 F.3d 687, 693–94 (2d Cir.1998) (citing *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983)). The Court in *Rooker* determined that only the Supreme

Court has subject matter jurisdiction to review a state court judgment. In *Feldman,* the Supreme Court examined whether the plaintiff's claims were "inextricably intertwined" with state court determinations. If they were "inextricably intertwined," then the federal district court did not have jurisdiction. *Id.* The relationship between the Rooker–Feldman doctrine and principles of res judicata and collateral estoppel has been the subject of much debate by the courts and commentators. *See Hachamovitch,* 159 F.3d at 696 ("[w]hether the Rooker–Feldman doctrine is coextensive with preclusion or extends beyond preclusionary rules is a question that has perplexed courts and commentators."). The Second Circuit addressed the issue in *Moccio,* and set forth the following test to determine whether the Rooker–Feldman doctrine applies:

> We agree that the Supreme Court's use of 'inextricably intertwined' means, at a minimum, that where a federal plaintiff had an opportunity to litigate a claim in a state proceeding ... subsequent litigation of the claim will be barred under the Rooker–Feldman doctrine if it would be barred under the principles of preclusion.

95 F.3d at 199–200.

the order for relief under this chapter, and any liability on a claim that is determined under section 502 of this title as if such claim had arisen before the commencement of the case, whether or not a proof of claim based on any such debt or liability is filed under section 501 of this title, and whether or not a claim based on any such debt or liability is allowed under section 502 of this title.

Section 523 sets forth those debts that are excepted from discharge, and § 523(a)(3) refers to debts that are not listed or scheduled in cases for which a timely proof of claim or a timely request for a determination of dischargeability for that debt could not be filed. Section 523(a)(3) states as follows, in relevant part:

A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

(3) neither listed nor scheduled under section 521(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit—

(A) if such debt is not of a kind specified in paragraph (2), (4), or (6) **6 of this subsection, timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing; or

(B) if such debt is of a kind specified in paragraph (2), (4), or (6) ** of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor

had notice or actual knowledge of the case in time for such timely filing and request.

The first portion of § 523(a)(3), § 523(a)(3)(A), refers to debts other than those specified in § 523(a)(2), (4) and (6) (the intentional torts debts). If the creditor did not have notice or actual knowledge of the case in time for filing a proof of claim, debts other than the intentional torts debts set forth in § 523(a)(2), (4) and (6) are not discharged if they are not listed or scheduled in time for the creditor to file a proof of claim. This provision bars a debtor from receiving a discharge regarding an unlisted debt, other than one under § 523(a)(2), (4) or (6), if the creditor did not have sufficient notice to file a proof of claim. In other words, a debtor should not receive a discharge from a debt if the unlisted creditor was prevented, by the action of the debtor, from exercising its rights to fully participate in any possible distribution from the estate—such as filing a timely proof of claim. However, in a Chapter 7 no asset case in which a notice of no distribution was issued, as in the matter before the Court, the time for filing a proof of claim never expires.[7] *See In re Cates*, 183 B.R. 723, 725 (Bankr.M.D.N.C. 1995); *In re Mendiola*, 99 B.R. 864, 867 (Bankr.N.D.Ill.1989). Therefore, § 523(a)(3)(A) does not apply, and "listing" the debt will not change the fact that a dischargeable debt was discharged pursuant to § 727(b). *See Judd v. Wolfe*, 78 F.3d 110, 114 (3d Cir.1996).

Section 523(a)(3)(B) relates only to those debts set forth in § 523(a)(2), (4) and (6), the intentional tort debts. While § 523(a)(3)(A) protects an unlisted credi-

---

**6.** The asterisks refer to the Editors' Note in the 2000 Collier Pamphlet Edition of the Bankruptcy Code, which states:

The Bankruptcy Reform Act of 1994, Pub.L. No. 103–394 (effective on October 22, 1994), added paragraph (15) to section 523(a) and amended section 523(c)(1) to include cross references to that paragraph. In conjunction with these amendments,

Congress should have amended section 523(a)(3)(A) and (B) to include cross references to paragraph (15); this omission appears inadvertent.

**7.** For purposes of this decision, when the Court uses the term "a no asset case," it is referring to those cases in which no bar date for filing a proof of claim is established.

tor's right to file a proof of claim in a bankruptcy case, § 523(a)(3)(B) protects the unlisted creditor's rights to file a proof of claim *and* "the right to obtain a determination of the dischargeability of a debt in those instances where that right might otherwise be lost by reason of the passage of time." *Mendiola,* 99 B.R. at 866, 868. *See also Judd,* 78 F.3d at 114.

Unlike the other debts listed in § 523(a), a creditor objecting to discharge of a debt pursuant to § 523(a)(2), (4) or (6) (and (15)) [8] must file a complaint to determine dischargeability within a fixed period of time. *See* 11 U.S.C. § 523(c)(1); Fed. R. Bankr.P. 4007(c). Therefore, as opposed to the time to file a proof of claim in a Chapter 7 no asset case, the time to object to dischargeability of those debts that fall within subsections (2), (4) and (6) will expire, and the failure to file a timely complaint will result in the discharge of those debts. However, the Third and Ninth Circuits both noted that if the debt is one that falls under subsections (2), (4) or (6) of § 523(a), and the creditor did not have notice or actual knowledge of the case in time to request a determination of dischargeability (or to timely file a proof of claim), then § 523(a)(3)(B) renders the debt not discharged. *Judd,* 78 F.3d at 115; *Beezley v. California Land Title Co. (In re Beezley),* 994 F.2d 1433, 1434 (9th Cir.1993). There, as in § 523(a)(3)(A), the unlisted creditor must have an opportunity to file a timely proof of claim. Furthermore, because it is a debt that arose from an intentional tort, the creditor must also have an opportunity to seek a determination that the debt at issue is a § 523(a)(2), (4) or (6) debt. Therefore, even though the unlisted creditor is not time barred from participating in any distribution that may occur if assets are discovered in a case that was identified as a no asset case, the debtor is prevented from receiving a discharge from a § 523(a)(2), (4) or (6) debt unless the unlisted creditor had an

opportunity to timely file an objection to the discharge of that debt under § 523(a)(2), (4) or (6).

Enterprise cites § 523(a)(3)(A) as support for the proposition that the Enterprise debt was not discharged, and it does not allege that its debt is one that falls within § 523(a)(2), (4) or (6). Therefore, the Court need not consider the issues that would be raised had the unlisted creditor alleged that the debt was a § 523(a)(2), (4) or (6) debt.

Two approaches have emerged regarding omitted debts in Chapter 7 no asset cases—those courts that apply an "equitable approach" and those that apply a "mechanical approach." *See Judd,* 78 F.3d at 116. The mechanical approach appears to be the majority view. If the mechanical approach is applied, the Enterprise debt was discharged as a matter of law upon the entry of the Discharge Order.

*Equitable Approach*

Many of the courts that apply the "equitable approach" take the position that reopening the debtor's bankruptcy case to add the omitted creditor has an impact on the discharge of the relevant debt. Those courts often examine the circumstances surrounding the failure to list a certain creditor in their determination of whether to reopen the case and schedule the omitted creditor. Perhaps the most often cited United States Circuit Court of Appeals case for the equitable approach is a 1983 Seventh Circuit decision, *Stark v. St. Mary's Hospital (In re Stark),* 717 F.2d 322. The court in *Stark* found as follows:

> [i]n a no-asset bankruptcy where notice has been given pursuant to Rule 203(b), a debtor may reopen the estate to add an omitted creditor where there is no evidence of fraud or intentional design.

*Id.* at 324. The court further noted that § 523(a)(3) protects the right of a creditor

---

8. Inasmuch as § 523(a)(3) only refers to § 523(a)(2), (4) and (6), this Court hereinafter will not reference § 523(a)(15) concerning the

need to file a timely objection to discharge of a § 523(a)(15) debt.

to timely file a proof of claim, and if subsequent assets are found, the creditor shall have the opportunity to file a claim. Other cases have similarly examined the intent of the debtor in omitting the creditor when determining whether to reopen the bankruptcy case.[9] *See In re Moyette*, 231 B.R. 494, 497–98 (E.D.N.Y.1999) (agreeing with courts that have found that motions to reopen should be liberally granted unless omission was the result of fraud, recklessness or intentional design or if would prejudice creditor); *In re Weintraub*, 171 B.R. 506, 507–08 (Bankr.S.D.N.Y.1994) (noting that when debtor seeks to reopen case to add name of creditors and obtain discharge, debtor must demonstrate that failure to list was neither intentional nor reckless); *In re Godley*, 62 B.R. 258, 261–62 (Bankr.E.D.Va.1986) (denying motion to reopen because debtor intentionally omitted creditor and creditor was prejudiced); *In re Maddox*, 62 B.R. 510, 514 (Bankr. E.D.N.Y.1986) (examining innocence of debtor in omitting debt).

### Mechanical Approach

Those courts that follow the "mechanical approach" apply the plain meaning of the Bankruptcy Code in finding that the debt at issue was discharged by operation of law, and those courts contend to be more fully carrying out the intentions of Congress in its drafting of the Bankruptcy Code. *See Judd v. Wolfe*, 78 F.3d 110, 116 (3d Cir.1996). Three United States Courts of Appeals have ruled in a manner consistent with the "mechanical approach." *Zirnhelt v. Madaj (In re Madaj)*, 149 F.3d 467, 468 (6th Cir.1998); *Judd*, 78 F.3d 110;

**9.** The Fifth and Eleventh Circuits have examined the intent of the debtor surrounding the omission in the context of dischargeability actions. *See Stone v. Caplan (In re Stone)*, 10 F.3d 285 (5th Cir.1994); *Samuel v. Baitcher (In re Baitcher)*, 781 F.2d 1529 (11th Cir. 1986).

**10.** The concurring opinion in the *Beezley* decision provides a thorough analysis of those cases that have similarly ruled and criticizes the Seventh Circuit for its opinion and analy-

*Beezley v. California Land Title Co. (In re Beezley)*, 994 F.2d 1433 (9th Cir.1993).

In *Judd*, the court framed the issue as follows:

if a debtor, in a Chapter 7, no-asset, no-bar date bankruptcy proceeding fails to list a claim on its schedule of creditors and the bankruptcy case is closed, is the debt nonetheless discharged pursuant to 11 U.S.C. §§ 727(b) and 523(a)(3), or must the debtor move the bankruptcy court, pursuant to 11 U.S.C. § 350(b), for an order reopening the closed proceeding to add the omitted creditor for the purpose of discharging the claim?

78 F.3d at 111. In *Judd*, the court found that § 523(a)(3)(A) did not apply and that the debt at issue was discharged by operation of law at the time of discharge unless the debt fell under § 523(a)(2), (4) or (6). *Judd*, 78 F.3d at 114. The Third Circuit was following the conclusion reached by the Ninth Circuit on the same issue, however, the Ninth Circuit provided little analysis.[10] *See In re Beezley*, 994 F.2d 1433. The Sixth Circuit Court of Appeals perhaps best summarized the split of authorities as follows:

This confusion is due, in part, to a line of cases that perpetuates the erroneous view that once his case is closed, the debtor must have his case reopened in order to discharge a pre-petition debt not listed in the bankruptcy petition; once the case is reopened, the debtor amends his schedules to list the debt, and the now-scheduled debt is covered by the discharge. But this is not the law.

sis in its *Stark* opinion in which the court exercised its equitable powers and found that a debtor may reopen a case to add an omitted creditor where there is no evidence of fraud or intentional design. The concurring opinion noted that "[t]he damage done by an incautious reliance on *Stark* is far from trivial," and that "*Stark* contravenes the Code for no reason whatsoever." *Beezley*, 994 F.2d at 1439, 1440 n. 5 (O'Scannlain, Circuit Judge, concurring).

*Madaj,* 149 F.3d at 468. The Sixth Circuit found that reopening the bankruptcy case to schedule a previously unlisted debt in a no asset case has no effect on the dischargeability of the debt. *Id.* at 472. Other courts have ruled similarly. *See In re Herzig,* 238 B.R. 5 (E.D.N.Y.1998); *American Standard Ins. Co. v. Bakehorn,* 147 B.R. 480 (N.D.Ind.1992); *In re Wells,* 246 B.R. 268 (Bankr.E.D.Ky.2000); *Keenom v. All America Marketing (In re Keenom),* 231 B.R. 116 (Bankr.M.D.Ga.1999); *In re McDaniel,* 217 B.R. 348 (Bankr.N.D.Ga. 1998); *Maroney v. Bowman (In re Maroney),* 195 B.R. 452 (Bankr.D.Ariz.1996); *In re Cates,* 183 B.R. 723 (Bankr.M.D.N.C. 1995); *Stucker v. Cardinal Building Materials, Inc. (In re Stucker),* 153 B.R. 219 (Bankr.N.D.Ill.1993); *In re Humar,* 163 B.R. 296 (Bankr.N.D.Ohio 1993); *In re Thibodeau,* 136 B.R. 7 (Bankr.D.Mass. 1992); *In re Stecklow,* 144 B.R. 314 (Bankr.D.Md.1992); *In re Guzman,* 130 B.R. 489 (Bankr.W.D.Tex.1991); *In re Hunter,* 116 B.R. 3 (Bankr.D.C.1990); *In re Mendiola,* 99 B.R. 864 (Bankr.N.D.Ill. 1989); *In re Karamitsos,* 88 B.R. 122 (Bankr.S.D.Tex.1988); *In re Anderson,* 72 B.R. 495 (Bankr.D.Minn.1987).

Enterprise relies on a Second Circuit Court of Appeals decision rendered in 1946 that held that it was error to permit the reopening of a Chapter 7 no asset case to add an omitted creditor. *Milando v. Perrone,* 157 F.2d 1002. It is clear from the decision in *Milando* that the court approached its decision from the viewpoint that its decision affected whether the debt was discharged. The court in *Milando* relied upon former Sec. 17, sub. a(3), of the Bankruptcy Act, 11 U.S.C. § 35, which provided that a debt will not be discharged if the creditor does not have notice or actual knowledge of the proceedings. *Id.* at 1003. The court noted that it did not have the power to disregard the stated provision, and that the time for filing proofs of claim had expired. *Id.* at 1003–04. The applicable statutory section is now § 523(a), which, pursuant to § 523(a)(3)(A), does not discharge a debt

that was not listed or scheduled in time to permit *timely filing of a proof of claim.* However, as stated earlier, under the Bankruptcy Rules, unlike the former Bankruptcy Act, proofs of claim need not be filed in a no asset case. Under such circumstances, a notice of no distribution is usually sent to all creditors pursuant to Bankruptcy Rule 2002(e).

Enterprise further cites decisions that follow and cite *Milando* as good law. *But see In re Maddox,* 62 B.R. 510, 513 (Bankr.E.D.N.Y.1986) (noting that the authority of the *Milando* decision has been eroded). However, *Milando* and those decisions cited by Enterprise as following *Milando* can be distinguished because they each refer to the setting of a bar date to file proofs of claim, thus, under § 523 (or the relevant sections under the former Bankruptcy Act), the creditor did not get notice of the bankruptcy in time to file a proof of claim (or received no notice of the bankruptcy at all). *See Laczko v. Gentran, Inc. (In re Laczko),* 37 B.R. 676, 677 (9th Cir. BAP 1984) (noting that a bar date was set and following *Milando* and former section 17(a)(3)), *aff'd,* 772 F.2d 912 (9th Cir.1985); *In re Jordan,* 21 B.R. 318, 320 (Bankr.E.D.N.Y.1982) (notes that motion to add omitted creditor filed subsequent to time fixed to file proof of claim); *In re McNeil,* 13 B.R. 743, 744, 746 (Bankr. S.D.N.Y.1981) (stating at one point that "usual notice of the commencement" was distributed, but later noting that time for filing proofs of claim has passed).

The failure to schedule a pre-petition debt in a Chapter 7 no asset case does not impact the dischargeability of the debt where the debt is not otherwise excepted from discharge under § 523(a)(2), (4) or (6). *See Madaj,* 149 F.3d at 472. The plain meaning of the Bankruptcy Code provides that the Enterprise debt was discharged under § 727(b). *But see In re Godley,* 62 B.R. 258, 261–62 (Bankr. E.D.Va.1986) (denying motion to reopen because although strict reading of Bankruptcy Code provides that the debt was

discharged, the Bankruptcy Code places a premium on scheduling all creditors). This Court finds no basis to disregard the plain meaning of the Bankruptcy Code. *See Mendiola,* 99 B.R. at 870, n. 8.

■ The "mechanical approach" gives recognition to the limited applicability of § 523(a)(3), most effectively carries out the intentions of Congress in drafting the Bankruptcy Code, correctly applies the relevant Bankruptcy Code sections, and insures that both the rights of the debtor and creditors are protected. An inquiry into the debtor's state of mind surrounding the omission, for purposes of determining whether § 523(a)(3) is implicated, is not relevant. *See Judd,* 78 F.3d at 116; *Herzig v. Park Avenue Leasing Corp. (In re Herzig),* 238 B.R. 5, 9 n. 2 (E.D.N.Y.1998). Accordingly, this Court finds that the Enterprise debt was discharged pursuant to § 727(b) upon the granting of the Debtors' discharge.[11]

Having concluded that the Enterprise debt was discharged as a matter of law, pursuant to § 727(b), the Court must determine, notwithstanding any preclusionary doctrines that may arguably prevent the Court from exercising jurisdiction over the matter presented herein, whether § 524(a)(1) voids any judgment of the State Court and whether § 524(c) and (d) voids any agreement entered into by the parties in this case.

*Section 524(a)(1)*

■ Section 524(a)(1) states as follows:

(a) A discharge in a case under this title—

(1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727 ..., whether or not discharge of such debt is waived ....

The plain language of § 524(a)(1) provides that any judgment is void if it is a determination of the personal liability of the debtor with respect to a discharged debt. Nothing in § 524(a)(1) distinguishes the type of judgment subject to the provision. Nor does the section lead one to conclude that the level of participation by the debtor in a state court should be considered in the application of the section. The legislative history indicates that this section was enacted to correct a perceived abuse:

Section 524(a) was derived from former Bankruptcy Act § 14f, which was added in 1970 to correct a perceived abuse arising from the former status of a bankruptcy discharge as merely creating an affirmative defense that was waived if not affirmatively pleaded and proved in postbankruptcy litigation .... Congress was expressly making it possible for a discharged debtor to ignore a creditor's subsequent action in a nonbankruptcy court.

*See In re Dunbar,* 235 B.R. 465, 472 (9th Cir. BAP 1999) (citing Bankruptcy Act § 14f, added by Pub.L. 91–467, § 3, 84 Stat. 991, repealed by Pub.L. 95–598, § 401, 92 Stat. 2682 (1978)). However, there is no language in the section as adopted that would limit the application of § 524(a) to situations in which the Bankruptcy Court were to find that the debtor was taken advantage of or somehow intimidated by the actions of the creditor. The plain language of § 524(a)(1) provides that any judgment that is a determination of the personal liability of the debtor with respect to a debt discharged pursuant to § 727 is void. 11 U.S.C. § 524(a)(1). Section 524(a)(1) specifically provides that any such judgment is void and not voidable.

In the matter before the Court, the State Court entered a Default Judgment against the Debtor imposing personal liability upon him based upon a debt that had been discharged under § 727. Such circumstances are exactly what § 524(a)(1)

---

**11.** As previously noted, Enterprise does not allege that the debt falls within the purview of § 523(a)(2), (4) or (6) or any other enumerated exception.

was meant to correct, even though in this case it was the Debtor's failure to list the Enterprise debt that enabled Enterprise to argue that the debt was not discharged by the Discharge Order and, therefore, commenced its action in State Court against the Debtor.

Bankruptcy courts have similarly utilized § 524(a)(1) to void a state court judgment based upon a debt discharged by operation of law pursuant to § 727(b). *See Keenom v. All America Marketing (In re Keenom)*, 231 B.R. 116, 128 (Bankr. M.D.Ga.1999); *Maroney v. Bowman (In re Maroney)*, 195 B.R. 452, 455 (Bankr. D.Ariz.1996); *Stucker v. Cardinal Building Materials, Inc. (In re Stucker)*, 153 B.R. 219, 223 (Bankr.N.D.Ill.1993). In *Keenom*, the court found that the bankruptcy court can review a state court's determination that a debtor is liable for a debt discharged in his bankruptcy case. *Keenom*, 231 B.R. at 127–28. The debt at issue was an unlisted debt in a no asset case that was discharged by operation of law pursuant to § 727(b). That court found concurrent jurisdiction to determine if a debt was discharged by § 523(a)(3), but also found that if the state court's determination was clearly erroneous, the bankruptcy court can void the judgment pursuant to § 524(a)(1). The court further found that the bankruptcy court can only exercise such power when "the record from the state court lacks substantial evidence to support its decision." *Id.* at 128. *See also Stucker*, 153 B.R. 219 (judgment based upon discharged debt obtained against debtor that failed to list debt in no asset case is void pursuant to § 524(a)(1)).

In *Maroney*, the debtor failed to list a judgment debt in a Chapter 7 no asset case. Subsequent to the discharge, the judgment creditor sought and obtained a state court judgment, based upon an arbitrator's ruling, that the debt had not been discharged. Upon the debtor's motion to the bankruptcy court for sanctions for a violation of the discharge order, the bankruptcy court found that the underlying

debt had been discharged by operation of law, therefore, the state court judgment was void pursuant to § 524(a)(1). Furthermore, the court found that void judgments cannot be the basis for res judicata. 195 B.R. at 454–55.

With respect to the preclusion doctrines, the plain meaning of § 524(a)(1) applies to void the State Court judgment regardless of this Court's jurisdiction over this matter. Nevertheless, there is support for the argument that this Court has exclusive jurisdiction over the limited issue of whether a debt of an unlisted creditor in a no asset case was discharged by operation of law pursuant to § 727(b) and that, therefore, Rooker–Feldman is inapplicable. *See Pavelich v. McCormick, Barstow, Sheppard, Wayte & Carruth LLP (In re Pavelich)*, 229 B.R. 777 (9th Cir. BAP 1999). The court in *Pavelich* found that the Rooker–Feldman doctrine did not bar the federal court from considering whether the discharge injunction had been violated. The court noted that an exception to Rooker–Feldman exists when the state court judgment is void ab initio, which is the case when the state court does not honor the bankruptcy discharge issued by the federal court. The court in *Pavelich* recognized the concurrent jurisdiction of state court to construe the discharge and determine whether a particular debt is or is not within the discharge. *Id.* at 783. However, the court noted that § 524(a)(1) operates to void the state court judgment to the extent it construes the bankruptcy discharge incorrectly. *Id.* at 783–84. *Compare Gruntz v. County of Los Angeles (In re Gruntz)*, 202 F.3d 1074 (9th Cir.2000) (bankruptcy court has exclusive jurisdiction to determine motions to terminate, annul, or modify automatic stay; to extent state courts have concurrent jurisdiction, "their judgment would have to defer to the plenary power vested in the federal courts over bankruptcy proceedings."). *But cf. Ferren v. Searcy Winnelson Co. (In re Ferren)*, 203 F.3d 559 (8th Cir.2000); *Sin-*

*gleton v. Fifth Third Bank (In re Single-ton)*, 230 B.R. 533 (6th Cir. BAP 1999).

This Court does not need to decide whether it has exclusive jurisdiction over this matter or whether concurrent jurisdiction exists, because the Default Judgment, and the Settlement Agreement to the extent it is considered a judgment of the State Court, is void pursuant to § 524(a)(1). Furthermore, since § 524(a)(1) voids the Default Judgment (and the Settlement Agreement as set forth above), the Court does not need to further examine the applicability of the Rooker–Feldman doctrine or any other preclusionary doctrine. Even without the application of § 524, there is support for the proposition that the bankruptcy court can review a state court decision to determine whether the § 523(a)(3)(B) exception to discharge should be considered. *See Massa v. Addona (In re Massa)*, 187 F.3d 292 (2d Cir.1999).

In *Massa*, the debtor did not list a prepetition state court action or the creditor-appellees involved in his Chapter 13 schedules. The case was converted to a Chapter 11 and then to a Chapter 7, where the debtor received a discharge. The state court action eventually continued and the state court ruled that the creditor-appellees' claim had not been discharged in the debtor's bankruptcy. The debtor's bankruptcy case then was reopened when it filed a motion seeking contempt against the creditor-appellees for violation of the discharge order pursuant to § 524(a) for continuing the state court action after the discharge order had been entered. The bankruptcy judge denied the motion and upheld the state court decision that the appellees' claim had not been discharged as being validly rendered in the state court's exercise of its concurrent jurisdiction over § 523(a)(3) dischargeability issues. The bankruptcy judge further held that he lacked jurisdiction to overturn the decision based upon the Rooker–Feldman doctrine. The district court affirmed. The Second Circuit Court of Appeals af-

firmed, but specifically stated that it was affirming on different grounds. *See Massa*, 187 F.3d at 295. The Second Circuit examined whether the appellees in *Massa* had 'actual knowledge' of the bankruptcy case to determine if the debt at issue in the state court action had been excepted from discharge pursuant to § 523(a)(3)(B). *Id.* at 296–98. If the creditor did have the requisite knowledge, the debt would have been discharged as a matter of law under § 727(b). *See* § 727(b) and § 523(a)(3)(B). The Second Circuit further analyzed whether knowledge of the bankruptcy proceeding could be derived from letters sent to the appellees' counsel. The court concluded that the appellees did not have notice or actual knowledge of the Chapter 7 proceeding, therefore, the debt was never discharged. *Massa*, 187 F.3d at 298.

The Second Circuit in *Massa* did not apply the Rooker–Feldman doctrine and reviewed those facts before the state court concerning the notice issue in § 523(a)(3)(B), even though the state court had already ruled on the matter. The appellees argued that the state court properly exercised concurrent jurisdiction to exclude the claim from discharge. However, the Second Circuit reviewed whether the lack of notice element was present, stating that "the opportunity for a creditor to participate in bankruptcy proceedings is of obvious importance." *Id.* at 296 (citations omitted).

Once the court concluded that the creditor-appellees had neither notice nor actual knowledge of the Chapter 7 proceeding, the court then found that the debt was never discharged and therefore the creditor-appellees were not precluded from continuing the state court action. The Second Circuit did not review the substantive decision under any appellate standard but seemed to apply a preclusive effect to that portion of the decision once it determined the notice issue. It would appear that if the Second Circuit disagreed with the state court's finding as to the lack of notice issue that it would have found that the

debt was discharged as a matter of law and voided the state court judgment under § 524(a). It was, apparently, only after the Second Circuit found that the debt was not discharged as a matter of law under § 727(b) that it gave preclusive effect to the state court judgment.

The Enterprise debt was discharged as a matter of law upon the entry of the Discharge Order pursuant to § 727(b), and the Default Judgment was a determination of the Debtor's personal liability based upon a discharged debt. Accordingly, the State Court Default Judgment is void pursuant to § 524(a)(1). If the Settlement Agreement is considered a judgment of the State Court, even though there is no indication that it was reduced to judgment, it is void pursuant to the same analysis. *See Vlassis v. Corines,* 247 A.D.2d 609, 669 N.Y.S.2d 361 (N.Y.App.Div.1998) (stipulation dismissing earlier action binding upon party because it was writing subscribed by the attorney for the party seeking vacatur of the stipulation). See also N.Y. C.P.L.R. 2104 (McKinney 1999). To the extent the Settlement Agreement is not a judgment of the State Court, it is void as an invalid agreement of the Debtor to repay a dischargeable debt for failure to comply with the reaffirmation requirements of § 524 as discussed hereinafter.

*Reaffirmation Agreements*

■ The Debtor's personal liability could survive discharge through a valid reaffirmation agreement. *See* § 524. The Debtor contends that the Settlement Agreement entered at the time of the State Court proceeding does not meet the requirements for reaffirmation of the debt. Enterprise's counterargument is that the Debtor explicitly waived any defenses or counterclaims under the terms of the Settlement Agreement and that since the Debtor was settling the discharge defense by entry into the Settlement Agreement,

the requirements for a valid reaffirmation agreement do not appear to be applicable.

■ A debtor may enter into an agreement to reaffirm an otherwise dischargeable debt. *Republic Bank v. Getzoff (In re Getzoff),* 180 B.R. 572, 574 (9th Cir. BAP 1995); *see also Watkins v. Guardian Loan Co. (In re Watkins),* 240 B.R. 668, 675–76 (Bankr.E.D.N.Y.1999); *Smith v. First Suburban Nat'l Bank (In re Smith),* 224 B.R. 388, 395 (Bankr. N.D.Ill.1998). Such an agreement is binding only if it meets the requirements of § 524(c) and (d). "The only manner in which a debtor's personal liability on a prepetition debt can survive a discharge is through an enforceable reaffirmation agreement between the debtor and creditor pursuant to 11 U.S.C. § 524(c)." *In re Moore,* 50 B.R. 301, 302 (Bankr.S.D.Ohio 1985). Section 524(c)[12] states as follows, in relevant part:

An agreement between a holder of a claim and the debtor, the consideration for which, in whole or in part, is based on a debt that is dischargeable in a case under this title is enforceable only to any extent enforceable under applicable nonbankruptcy law, whether or not discharge of such debt is waived, only if—

(1) such agreement was made before the granting of the discharge under section 727...

(2) (A) such agreement contains a clear and conspicuous statement which advises the debtor that the agreement may be rescinded at any time prior to discharge or within sixty days after such agreement is filed with the court, whichever occurs later, by giving notice of rescission to the holder of such claim; and

(B) such agreement contains a clear and conspicuous statement which advises the debtor that such agree-

---

**12.** Section 524(d) applies when a court holds a discharge hearing and the debtor seeks to reaffirm a debt, the court is required to provide certain information to debtors concerning their entry into reaffirmation agreements when the debtor was not represented by counsel in negotiating the agreement. 11 U.S.C. § 524(d).

ment is not required under this title, under nonbankruptcy law, or under any agreement not in accordance with the provisions of this subsection;

(3) such agreement has been filed with the court and, if applicable, accompanied by a declaration or an affidavit of the attorney that represented the debtor during the course of negotiating an agreement under this subsection, which states that—

(A) such agreement represents a fully informed and voluntary agreement by the debtor;

(B) such agreement does not impose an undue hardship on the debtor or a dependent of the debtor; and

(C) the attorney fully advised the debtor of the legal effect and consequences of—

(i) an agreement of the kind specified in this subsection; and

(ii) any default under such an agreement.

Section 524(c) specifically contemplates the situation in which the consideration for an agreement between the holder of a claim and the debtor is based, *in whole or in part*, on a dischargeable debt. Section 524(c) must be complied with for the agreement to be valid.

In *In re Grabinski*, the debtor moved to reopen her Chapter 7 case to amend her schedules to add a creditor that she failed to list.[13] 150 B.R. 427, 433 (Bankr.N.D.Ill. 1993). Subsequent to receiving her discharge, the debtor told creditor's counsel that she would catch up on her payments (she had been making her payments on the debt regardless of her bankruptcy filing). Her representation was confirmed by a letter from creditor's counsel to the debtor and a letter from the debtor to creditor's counsel. The debtor apparently did not make the payments and the creditor filed suit in state court. The creditor alleged that the debtor had reaffirmed the debt by her letter to creditor's counsel. After a bench trial on the matter, the state court judge entered an order that the debt had been reaffirmed. The bankruptcy court refused to give collateral estoppel to the state court order finding reaffirmation, finding that the creditor failed to prove that the issue of reaffirmation was actually litigated by the state court. The bankruptcy court further found that a reaffirmation agreement did not occur under the facts of the case because there was no compliance with § 524, therefore, the state court judgment was void. 150 B.R. at 432–33.[14] Similarly, in the matter before the Court, the Settlement Agreement is void as a determination of the personal liability of the Debtor with respect to a debt discharged under § 727(b).

Although not specifically argued by Enterprise, Enterprise's position could be construed as contending that the Settlement Agreement provided new consideration and therefore created a new contract, and thus the requirements of § 524 need not be met. *See Liptz & Roberts, Chartered Pension Plan Trust v. Stevens (In re Stevens)*, 217 B.R. 757, 760 (Bankr.D.Md. 1998). The Settlement Agreement was entered into during negotiations surrounding Enterprise's action against the Debtor in State Court. Enterprise obtained a default judgment from the State Court in the amount of $8,747.27. The Settlement Agreement provided as follows, in relevant part:

2. Defendant agrees to pay plaintiff the sum of $7,500.00 as and for a com-

---

13. This debtor also moved for a new date for the omitted creditor to file objections to discharge and dischargeability and for the court to vacate her discharge to enable the creditor to file such objections.

14. The bankruptcy court found that reopening the debtor's case to list the omitted creditor would be futile. However, the bankruptcy court granted the debtor's motion to reopen for the purpose of allowing the creditor to object to discharge and dischargeability. *Grabinski,* 150 B.R. at 433.

plete settlement of the claims raised in this action....

3. Defendant shall pay the Settlement Amount as follows: $200.00 upon the signing of this Agreement ... and $200.00 every month thereafter ... until the Settlement Amount is paid in full.

If the consideration for the Settlement Agreement is based, *in whole or in part,* on a dischargeable debt, then the agreement must comply with § 524. 11 U.S.C. § 524. Therefore, even if it could be argued that the Settlement Agreement was based upon *new* consideration, this Court finds that the Settlement Agreement was at least based in part upon the discharged debt and therefore must comply with § 524 to be valid. *See Getzoff,* 180 B.R. at 574–75 (fact that new consideration given by creditor in exchange for second guaranty does not change fact that consideration by debtor was to honor discharged debt); *Stevens,* 217 B.R. at 760 (unless court finds promissory notes executed by debtor are not in any way supported by a promise by debtor to pay obligation due under original notes, the promissory notes cannot be found to be valid and enforceable); *In re Arnold,* 206 B.R. 560, 564 (Bankr.N.D.Ala. 1997) (at least part of consideration for agreement was based on repayment of discharged debt and must comply with § 524(c)).

The purpose of the reaffirmation rules are "to protect debtors from compromising their fresh start by making unwise agreements to repay dischargeable debts." *Getzoff,* 180 B.R. at 574 (citations omitted). Sections 524(c) and (d) were enacted to protect debtors and "forestall all inquiries about the voluntariness of discharge agreements with creditors by narrowly and rigidly defining what kinds of agreements were valid." *Van Meter v. American State Bank,* 89 B.R. 32, 34 (W.D.Ark.1988); *see also In re Eccleston,* 70 B.R. 210, 212 (Bankr.N.D.N.Y.1986). Accordingly, the reaffirmation rules should be strictly complied with. *See also In re*

*Adams,* 229 B.R. 312, 316 (Bankr.S.D.N.Y. 1999). The reaffirmation rules should be construed in the favor of the debtor and not the creditor. *In re Eccleston,* 70 B.R. 210, 212 (Bankr.N.D.N.Y.1986).

In the matter before the Court, the Settlement Agreement does not even meet the first requirement of § 524(c). The Settlement Agreement was not entered into prior to discharge required by § 524(c)(1), does not contain the requisite disclosures required by § 524(c)(2), was not filed with the Court as required by § 524(c)(3), and the Court did not have the opportunity, pursuant to § 524(c)(6), to insure that the Settlement Agreement was not imposing an undue hardship on the Debtor and was in the best interest of the Debtor. The Settlement Agreement does not comport with the requirements for a valid reaffirmation agreement pursuant to § 524(c) and is therefore void. Furthermore, there is no evidence that the State Court considered whether the Enterprise debt had been reaffirmed, and even if it had, based on the facts of this case, any such judgment pertaining to the Debtor's personal liability as to the discharged debt would be void, as discussed previously. *See Grabinski,* 150 B.R. at 433.

As aforementioned, there is no evidence that any payments were made to Enterprise pursuant to the Settlement Agreement. Therefore, the Court need not reach the issue of whether any such payments would be considered voluntary within the meaning of § 524(f). However, the Court notes that courts have ruled that payments under similar circumstances are not voluntary. *See In re Bowling,* 116 B.R. 659, 664 (Bankr.S.D.Ind.1990) ("No transaction that leaves a debtor obligated to pay, or believing that he or she is obligated to pay any part of a discharged debt can be characterized as voluntary repayment within the meaning of section 524(f)."); *Van Meter v. American State Bank,* 89 B.R. 32, 34 (W.D.Ark.1988) ("provisions of § 524(f) do not validate repayments of discharged debts that are in any

manner induced by the acts of the creditor."); *In re Armstead,* No. 96–10592, 1997 WL 860677 *7 (Bankr.E.D.Pa. Nov.7, 1997) (same).

*Sanctions*

 The Debtor seeks an order from the Court holding Enterprise and Mr. D'Orazio in contempt pursuant to § 105 and § 524(a)(2) and awarding actual damages, costs, attorneys' fees and punitive damages to the Debtor. The Debtor provides no case law in support of an award of sanctions and presents no evidence on the issue of actual damages. The Second Circuit Court of Appeals has repeatedly required courts to specify the source of their authority to impose sanctions. *In re Ames Department Stores, Inc.,* 76 F.3d 66, 70 (1996). Section 524(a)(2) provides for injunctive relief and does not expressly provide for the recovery of actual damages, attorneys' fees or punitive damages. *Watkins v. Guardian Loan Co. (In re Watkins),* 240 B.R. 668, 680 (Bankr.E.D.N.Y. 1999). Section 524(a)(2) provides:

> (a) A discharge in a case under this title—
>
>> (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived.

However, bankruptcy courts have found that "violation of the injunction is punishable by contempt." *Mickens v. Waynesboro Dupont Employees Credit Union, Inc. (In re Mickens),* 229 B.R. 114, 118 (Bankr.W.D.Va.1999) (citing *In re Holland,* 21 B.R. 681 (Bankr.N.D.Ind.1982)); *see also Watkins,* 240 B.R. at 680 (citations omitted). A finding of civil contempt can entitle the aggrieved party to be compensated for all expenses, including attorneys' fees. *Mickens,* 229 B.R. at 118–19. Furthermore, under § 105, this Court may issue any order, process, or judgment that is necessary or appropriate to carry out

the provisions of the Bankruptcy Code. 11 U.S.C. § 105.

Attorneys' fees have been awarded in bankruptcy cases within the Second Circuit for a violation of the § 524 injunction as follows:

> (1) when a defendant willfully disobeys a court order, and
>
> (2) when a losing party acts in bad faith, vexatiously, wantonly, or for oppressive reasons.

*Watkins,* 240 B.R. at 678. This Court finds no evidence of bad faith or similar motive on behalf of Enterprise. *See In re Bowling,* 116 B.R. 659, 665 (Bankr. S.D.Ind.1990) (action of creditor had some colorable legal support; contempt sanctions not warranted); *see also Maroney v. Bowman (In re Maroney),* 195 B.R. 452, 455 (Bankr.D.Ariz.1996) (sanctions not warranted for creditor institution of a state court collection action where debtor failed to list creditor in Chapter 7 no asset case). The matter before this Court is not a case in which sanctions are appropriate. *See Bowling,* 116 B.R. at 664 ("Sanctions for contempt are not appropriate for technical and unintended violations of a debtor's rights."); *Penrod v. Arone (In re Penrod),* 163 B.R. 62, 63 (Bankr.W.D.Pa.1994) (court unwilling to issue sanctions for creditor's collection action on unlisted but discharged debt due to confusion caused by debtor's failure to properly complete bankruptcy schedules).

In the matter before the Court, the parties entered into an agreement for which both parties appeared to believe was valid. In *Liptz & Roberts, Chartered Pension Plan v. Stevens (In re Stevens),* the debtor entered into a reaffirmation agreement, apparently during the bankruptcy case, which the court found did not comply with § 524 and was invalid. 217 B.R. 757, 762 (Bankr.D.Md.1998). The court stated that "[a]s the court now finds the discharge order discharged the debt under the Promissory Notes, action to collect that debt is barred." *Id.* The court further stated that it "will not punish Plaintiffs for

accepting payments based on an agreement that all parties believed to be a valid and enforceable contract and which was fully performed by Plaintiffs." *Id.*

 Furthermore, although punitive damages have been awarded within this Circuit for a § 524 violation, *In re Watkins,* 240 B.R. at 681, punitive damages are not appropriate in this case. The bankruptcy court in *Watkins* awarded punitive damages for a § 524 violation based upon a finding of malicious and egregious behavior by the creditor. *Id.; see also Smith v. First Suburban National Bank (In re Smith),* 224 B.R. 388, 398 (Bankr. N.D.Ill.1998) ("In order to receive an award of punitive damages against a creditor who violates the discharge injunction, the debtor must prove some sort of malevolent intent or bad faith on the part of the creditor.") This Court does not find any evidence that Enterprise's actions were malicious or egregious, and punitive damages are not warranted. This Court will not order any sanctions against Enterprise or Mr. D'Orazio.

Accordingly, since (1) the Enterprise debt was discharged as a matter of law pursuant to § 727(b), (2) the Default Judgment is void pursuant to § 524(a)(1) and the Settlement Agreement is void pursuant to the same section to the extent it is considered a judgment of the State Court or, alternatively, if treated as an agreement to pay a discharged debt, it is unenforceable for failing to comply with the requirements of § 524(c), this Court grants the Debtor's Application for administrative purposes pursuant to 11 U.S.C. § 350(b) to amend the schedules and list the debt to Enterprise in order to provide a complete schedule of all of the Debtor's debts. The Debtor's Application is denied in all other respects. An order consistent with this Memorandum Decision will be entered simultaneously herewith.